WILLIAM GERALD PLEASANT v. VICTOR LEE JOHNSON

No. 433A84

(Filed 30 January 1985)

**Master and Servant § 89.1— workers' compensation—willful, wanton, and reckless conduct of co-employee—common law action allowed**

A directed verdict should not have been granted for defendant in a common law negligence action arising from a prank played by defendant on plaintiff co-employee. The Workers' Compensation Act does not preclude a suit against a co-employee for intentional torts, and injury resulting from willful, wanton, and reckless negligence should be treated as an intentional tort for purposes of the Workers' Compensation Act. G.S. 97-9, G.S. 97-10.1.

Justice VAUGHN did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

APPEAL of right under N.C.G.S. 7A-30(2) from the decision of a divided panel of the Court of Appeals, 69 N.C. App. 538, 317 S.E. 2d 104 (1984), affirming a directed verdict in favor of the defendant entered by *Judge A. Pilston Godwin, Jr.* on September 30, 1982 in Superior Court, DURHAM County. Heard in the Supreme Court November 15, 1984.

*McCain & Essen, by Grover C. McCain, Jr., and Jeff Erick Essen for plaintiff appellant.*

*Bryant, Drew, Crill & Patterson, P.A., by Lee A. Patterson, II for defendant appellee.*

MITCHELL, Justice.

The pivotal issue in this case is whether the North Carolina Workers' Compensation Act provides the exclusive remedy when

an employee is injured in the course of his employment by the willful, wanton and reckless conduct of a co-employee. We hold that it does not and that an employee may bring an action against the co-employee for injuries received as a result of such conduct. Accordingly, we reverse the decision of the Court of Appeals.

The facts in this case are not in dispute. The plaintiff and the defendant were employees of Electricon Incorporated. On May 13, 1980, the plaintiff returned from lunch to the construction site where he and the defendant were working. As the plaintiff walked across the parking lot toward the job site, a truck driven by the defendant struck the plaintiff, seriously injuring his right knee.

The plaintiff was awarded disability benefits under the Workers' Compensation Act. He then filed this action for damages, alleging in addition to simple negligence that:

> Defendant was willfully, recklessly and wantonly negligent in that he was operating the motor vehicle in such a fashion so as to see how close he could operate the said motor vehicle to the plaintiff without actually striking him but, misjudging his ability to accomplish such a prank, actually struck the plaintiff with the motor vehicle he was operating.

During his case in chief, the plaintiff called the defendant to the stand. The defendant testified that he had been joking or "horse-playing" at the time of the accident. He stated that he had intended to scare the plaintiff by blowing the horn and by operating the truck close to him. At the close of the plaintiff's evidence the defendant moved for and was granted a directed verdict.

This case involves the North Carolina Workers' Compensation Act. Before turning to those sections of the Act which are directly applicable here, we briefly review the background of workers' compensation legislation.

A tragic by-product of the Industrial Revolution was the vast number of workers who were injured in factories, mills, and mines. Yet the majority of injured workers who brought negligence actions against their employers found their claims defeated by the employer's "unholy trinity" of defenses: contributory negligence, assumption of risk, and the fellow-servant rule. S. Horovitz, *Injury and Death Under Workmen's Compensation*

*Laws 2* (1944) (hereinafter cited as *Horovitz*). Some courts attempted to reduce the harsh impact of these defenses by adopting doctrines such as the vice-principal exception to the fellow-servant rule. Most workers, however, remained without an adequate remedy for work-related injuries. *Id.,* p. 3.

In the mid-1880's Germany responded to the problem by enacting the first workers' compensation legislation. The German plan was compulsory and relied in large part upon employee contributions. 1 A. Larson, *The Law of Workmen's Compensation* § 5.10 (1984) (hereinafter cited as *Larson*). England established a workers' compensation plan in 1897. *Horovitz,* p. 5. In 1913 New York became the first state to enact workers' compensation legislation,[1] and the remaining states followed over the next several years. *Larson,* § 5.20. North Carolina adopted its Workers' Compensation Act in 1929.

The social policy behind workers' compensation is that injured workers should be provided with dignified, efficient and certain benefits for work-related injuries and that the consumers of the product are the most appropriate group to bear the burden of the payments. *Larson,* § 2.20. The most important feature of the typical workers' compensation scheme is that the employee and his dependents give up their common law right to sue the employer for negligence in exchange for limited but assured benefits. Consequently the negligence and fault of the injured worker ordinarily is irrelevant. *Id.,* § 1.10.

The provisions of the North Carolina Workers' Compensation Act with which we are primarily concerned here are N.C.G.S. 97-9 and 97-10.1. N.C.G.S. 97-9 provides:

> Every employer subject to the compensation provisions of this Article shall secure the payment of compensation to his employees in the manner hereinafter provided; and while such security remains in force, he or those conducting his business shall only be liable to any employee for personal injury or death by accident to the extent and in the manner herein specified.

1. New York adopted an earlier compensation scheme in 1910. It was ruled unconstitutional by the New York Court of Appeals in *Ives v. South Buffalo Ry.,* 201 N.Y. 271, 94 N.E. 431 (1911), on the ground that imposing liability without fault upon the employer constituted a taking of property without due process of law.

N.C.G.S. 97-10.1 states:

> If the employee and the employer are subject to and have
> complied with the provisions of this Article, then the rights
> and remedies herein granted to the employee, his depend-
> ents, next of kin, or personal representative shall exclude all
> other rights and remedies of the employee, his dependents,
> next of kin, or representative as against the employer at
> common law or otherwise on account of such injury or death.

We have held that these provisions bar a worker from main-
taining a common law negligence action against his employer.
*See, e.g., Hicks v. Guilford County*, 267 N.C. 364, 148 S.E. 2d 240
(1966). We also have interpreted the Act as foreclosing a worker
who is injured in the course of his employment from suing a co-
employee whose negligence caused the injury. N.C.G.S. 97-9;
N.C.G.S. 97-10.1 (and its predecessor 97-10); *Strickland v. King*,
293 N.C. 731, 239 S.E. 2d 243 (1977); *Altman v. Sanders*, 267 N.C.
158, 148 S.E. 2d 21 (1966); *Warner v. Leder*, 234 N.C. 727, 69 S.E.
2d 6 (1952). Provisions of the Act relative to an injured worker
bringing an action against a third party for negligence causing in-
jury have been held to apply only to third parties who were
"strangers to the employment." *Jackson v. Bobbitt*, 253 N.C. 670,
117 S.E. 2d 806 (1961); *Warner v. Leder*, 234 N.C. 727, 69 S.E. 2d 6
(1952).

We have recognized that, in cases involving intentional in-
jury by the employer, the employee cannot be relegated to the
limited recovery afforded by the Act, but may bring a common
law tort action against the employer. *See Warner v. Leder*, 234
N.C. 727, 69 S.E. 2d 6 (1952); *Essick v. Lexington*, 232 N.C. 200, 60
S.E. 2d 106 (1950). We also have said that an injured worker may
maintain a tort action against a co-employee for intentional in-
jury. *See, e.g., Wesley v. Lea*, 252 N.C. 540, 114 S.E. 2d 350 (1960).

In a recent opinion by Judge (now Justice) Vaughn, our Court
of Appeals expressly held that the Workers' Compensation Act
does not preclude a suit against a co-employee for intentional
torts. *Andrews v. Peters*, 55 N.C. App. 124, 284 S.E. 2d 748 (1981),
*disc. rev. denied*, 305 N.C. 395, 290 S.E. 2d 364 (1982). This holding
rested upon the common-sense conclusion that the legislature did
not intend to insulate a co-employee from liability for intentional
torts inflicted upon a fellow worker. *Id.* at 127, 284 S.E. 2d at 750.

The Court of Appeals also noted that in many of the jurisdictions granting co-employee immunity, an exception for intentional acts causing injury had been either expressly set out in the statutes or judicially grafted upon them. *Id.*

In his complaint in the present case, the plaintiff alleged that his injury occurred because the defendant was "willfully, recklessly and wantonly negligent." The defendant contends that such allegations are insufficient to allege an intentional tort which would support the plaintiff's action. We disagree.

The concept of willful, reckless and wanton negligence inhabits a twilight zone which exists somewhere between ordinary negligence and intentional injury. The state of mind of the perpetrator of such conduct lies within the penumbra of what has been referred to as "quasi intent." W. Prosser and W. Keeton, *The Law of Torts* § 34 (5th ed. 1984). Though the terms "willful," "reckless" and "wanton" are often used in conjunction, we have endeavored in prior cases to differentiate between them.

We have described "wanton" conduct as an act manifesting a reckless disregard for the rights and safety of others. *Brewer v. Harris*, 279 N.C. 288, 182 S.E. 2d 345 (1971); *Givens v. Sellars*, 273 N.C. 44, 159 S.E. 2d 530 (1968); *Wagoner v. R.R.*, 238 N.C. 162, 77 S.E. 2d 701 (1953); *Foster v. Hyman*, 197 N.C. 189, 148 S.E. 36 (1929). The term "reckless," as used in this context, appears to be merely a synonym for "wanton" and has been used in conjunction with it for many years. *See Bailey v. R.R.*, 149 N.C. 169, 62 S.E. 912 (1908).

Defining "willful negligence" has been more difficult. At first glance the phrase appears to be a contradiction in terms. The term "willful negligence" has been defined as the intentional failure to carry out some duty imposed by law or contract which is necessary to the safety of the person or property to which it is owed. *Brewer v. Harris*, 279 N.C. 288, 182 S.E. 2d 345 (1971); *Foster v. Hyman*, 197 N.C. 189, 148 S.E. 36 (1929); *Bailey v. R.R.*, 149 N.C. 169, 62 S.E. 912 (1908). A breach of duty may be willful while the resulting injury is still negligent. Only when the injury is intentional does the concept of negligence cease to play a part. *Foster v. Hyman*, 197 N.C. 189, 148 S.E. 36 (1929); *Ballew v. R.R.*, 186 N.C. 704, 120 S.E. 334 (1923). We have noted the distinction between the willfulness which refers to a breach of duty and the

willfulness which refers to the injury. In the former only the negligence is willful, while in the latter the injury is intentional. *Foster v. Hyman*, 197 N.C. 189, 148 S.E. 36 (1929).

Even in cases involving "willful injury," however, the intent to inflict injury need not be actual. Constructive intent to injure may also provide the mental state necessary for an intentional tort. *Id.*; *Ballew v. R.R.*, 186 N.C. 704, 120 S.E. 334 (1923). Constructive intent to injure exists where conduct threatens the safety of others and is so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified. *Foster v. Hyman*, 197 N.C. 189, 148 S.E. 36 (1929). Wanton and reckless negligence gives rise to constructive intent.

We have previously acknowledged that wanton and reckless behavior may be equated with an intentional act for certain purposes. Punitive damages may be recovered in an action for an intentional tort, though not in suits for ordinary negligence. By allowing recovery of punitive damages in cases involving wanton negligence, we have implicitly treated such cases as actions for intentional torts. *E.g.*, *Hinson v. Dawson*, 244 N.C. 23, 92 S.E. 2d 393 (1956); *Binder v. Acceptance Corp.*, 222 N.C. 512, 23 S.E. 2d 894 (1943). We have also held that wanton and reckless conduct can supply the malice necessary to support a second degree murder conviction against a defendant who killed another when driving while intoxicated. *State v. Snyder*, 311 N.C. 391, 317 S.E. 2d 394 (1984). *See State v. Trott*, 190 N.C. 674, 130 S.E. 627 (1925) (malice when one drunk allowed another to drive). We conclude that injury to another resulting from willful, wanton and reckless negligence should also be treated as an intentional injury for purposes of our Workers' Compensation Act.

Of the jurisdictions which provide co-employees with immunity from common law tort actions in situations covered by workers' compensation acts, sixteen appear to recognize an exception to such immunity in cases involving intentional torts. 2A A. Larson, *The Law of Workmen's Compensation* § 72.21 (1983 & Cum. Supp. 1984). Only four states, however, Florida, Hawaii, Iowa and Wyoming, have statutory schemes which treat willful, wanton and reckless conduct (or its equivalent) as an intentional

tort and exclude it from co-employee immunity.[2] Our research reveals no state which has explicity judicially adopted the willful, wanton and reckless exception to co-employee immunity. *But see, Mandolidis v. Elkins Industries, Inc.,* 246 S.E. 2d 907 (W. Va. 1978) (West Virginia Supreme Court permitted employees to sue for injuries caused by the *employer's* willful, wanton and reckless conduct and appeared to recognize that the reasoning could be applied to suits against co-employees).

In the past this Court has expressly rejected the argument that reckless and wanton conduct by a co-employee defeats the exclusive original jurisdiction of the Industrial Commission under the Workers' Compensation Act and thereby makes such co-employee subject to a common law tort action. *Wesley v. Lea,* 252 N.C. 540, 114 S.E. 2d 350 (1960). Other jurisdictions have also rejected this argument. *See, e.g., Bryan v. Jeffers,* 103 N.J. Super. 522, 248 A. 2d 129 (1968), *cert. denied,* 53 N.J. 581, 252 A. 2d 157 (1969). Despite such authority to the contrary and the lack of an express statutory provision, however, we now hold that the Workers' Compensation Act does not shield a co-employee from common law liability for willful, wanton and reckless negligence.

Our holding is consistent with the distinction which has previously been made in such cases between ordinary negligence and intentional torts. As was noted by the Court of Appeals in *Andrews v. Peters,* 55 N.C. App. 124, 284 S.E. 2d 748 (1981), accidents are unavoidable in today's industrial environment. By accepting employment a worker increases the risk of injury to himself and others. One commentator has suggested that a rationale supporting co-employee immunity is that immunity from common law suit for ordinary negligence is part of that which an employee receives for forfeiting his own right to bring a negligence action. 2A *Larson,* § 72.22. Furthermore, since negligence connotes unconscious inadvertence, allowing injured workers to sue co-employees would not reduce injuries caused by ordinary negligence. The same cannot be said in cases involving intentional torts.

---

2. Fla. Stat. Ann. § 440.11(1) (West 1981) ("willful and wanton disregard" or "gross negligence"); Hawaii Rev. Stat. § 386-8 (1976) ("wilful and wanton misconduct"); Iowa Code Ann. § 85.20 (West 1984) ("gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another"); Wyo. Stat. § 27-12-103(a) (1983) ("culpably negligent").

Permitting an injured worker to bring an action against a co-employee for an intentional tort places responsibility upon the tortfeasor where it belongs. Since the commission of an intentional tort includes a constructive or actual intent to injure, allowing an injured co-worker to sue the tortfeasor serves as a deterrent against future misconduct. By allowing wanton negligence to support awards of punitive damages, *see Hinson v. Dawson*, 244 N.C. 23, 92 S.E. 2d 393 (1956), we have recognized that such conduct can be deterred and should be treated as an intentional tort. Therefore, we hold that the Workers' Compensation Act does not shield a co-employee from liability for injury caused by his willful, wanton and reckless negligence.

The fact that the plaintiff has received benefits under the Workers' Compensation Act does not foreclose him from bringing an action for the defendant's willful and wanton negligence. In *Andrews* the Court of Appeals reasoned that where a co-employee had committed an intentional tort the injured worker could receive benefits under the Act and also recover damages from his co-employee. The same should hold true for injury caused by the co-employee's willful, reckless and wanton misconduct. Since the negligent co-employee is neither required to participate in the defense of the compensation claim nor contribute to the award, he is not unduly prejudiced by permitting the injured employee to sue him after receiving benefits under the Act. Furthermore, when an employee who receives benefits under the Act is awarded a judgment against a co-worker, any amount obtained will be disbursed according to the provisions of N.C.G.S. 97-10.2 and may reduce the burden otherwise placed upon an innocent employer or insurer.

The issue in this case is whether an injured worker may maintain a common law tort action against a *co-employee* whose willful, wanton and reckless negligence caused the worker's injury. We need not consider and do not decide whether an *employer* may be sued for similar conduct.

In conclusion we hold that the North Carolina Workers' Compensation Act does not insulate a co-employee from the effects of his willful, wanton and reckless negligence. An injured worker in such situations may receive benefits under the Act and also maintain a common law action against the co-employee. We believe

that this result will help to deter such conduct in the future. It would be a travesty of justice and logic to permit a worker to injure a co-employee through such conduct, and then compel the injured co-employee to accept moderate benefits under the Act. *See Horovitz*, p. 336. To the.extent that they conflict with this decision, *Wesley v. Lea*, 252 N.C. 540, 114 S.E. 2d 350 (1960) and *Warner v. Leder*, 234 N.C. 727, 69 S.E. 2d 6 (1952) are overruled. Since the plaintiff's complaint did allege that the defendant had been willfully, wantonly and recklessly negligent, the decision of the Court of Appeals affirming a directed verdict in favor of the defendant is reversed. This case is remanded to the Court of Appeals for further remand to the Superior Court, Durham County, for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice VAUGHN did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

Contrary to the impression conveyed by the majority opinion, the facts of this case do not reveal a malicious attempt by Johnson to come as close to Pleasant as possible without actually striking him. This was playful, although admittedly dangerous, *horseplay*—an attempt to scare Pleasant by driving close to him and scaring him by blowing the horn. These were good friends, no malice was intended and certainly no injury. The following are excerpts from the testimony of defendant Johnson:

Mr. Johnson, you were operating the van at the time Mr. Pleasants [sic] was struck, were you not?

Yes, sir.

At the time of that occurrence, were you trying to see how close you could operate the vehicle to Mr. Pleasant without actually striking him?

No, sir.

\*   \*   \*

It is true though, is it not Mr. Johnson, that at the time the van struck Mr. Pleasants [sic] you were trying to put a fright or a scare into him by operating the van close to him?

Yes, sir.

\* \* \*

And when Mr. Woods came and asked you about what happened, you told him that you had been horseplaying with the van, or messing around with it, did you not?

Yes, sir.

\* \* \*

You could have operated your vehicle in such a manner that it would not have even come close to Mr. Pleasants [sic]?

Yes, sir.

Did you just misjudge your ability to come close to him?

I won't trying to hit him.

I understand. You didn't mean to hit him, but I am saying did you misjudge your ability to drive the vehicle close to him and actually hit him?

No, sir.

You did hit him?

Yes, sir.

\* \* \*

You meant to come close, but you missed?

Yes, sir.

\* \* \*

Now, Mr. Johnson, did you honk the horn, toot the horn?

Yes, sir.

Is it correct you were about 20 to 30 feet from those folks when you honked the horn?

Yes, sir.

Pleasant v. Johnson

COURT: How far?

About 20 feet.

\*   \*   \*

When I tooted the horn and Jessie moved and Bill didn't, I put on the brakes and cut the wheels the opposite way and then that is when I struck Bill.

\*   \*   \*

And Billy didn't move?

Yes, sir.

Then you slammed on the brakes?

Yes.

And turned the van to the left as shown in that picture?

\*   \*   \*

Why did you turn the van to the left after you honked the horn?

I seen I was fixing to hit him, so I tried to avoid it.

All right, did you then get out of the van?

Yes, sir.

And did you go over to Billy?

Yes, sir.

What if anything did you tell him?

Told him I was sorry, didn't mean to do it, I said — joking or horseplaying, I reckon.

Joking?

Yes, sir.

Did you intend to hit him?

No, sir.

Was in fact your intent to scare him with the toot of the horn?

Pleasant v. Johnson

Yes, sir.

What if anything did he say to you at that time when you got out of the van?

Told me not to worry about it.

Did he say anything else?

Not at that time until we got to the building.

What did he say up at the building?

Told me not to worry about it again, he would tell the people that he fell off the ladder.

Were you and Billy at that time friends?

Yes, sir.

Injuries incurred in the employer's parking lot while arriving at or departing from work have frequently been held to arise out of and in the course of employment because the risk of injury in such lots is different in kind and greater in degree than that experienced by the general public. *See, e.g., Bass v. Mecklenburg County*, 258 N.C. 226, 128 S.E. 2d 570 (1962); *Harless v. Flynn*, 1 N.C. App. 448, 162 S.E. 2d 47 (1968). As this plaintiff neither initiated nor participated in the horseplay resulting in his injury his claim is covered by our Act. The only question before this Court is whether the individual defendant co-employee is subject to this civil action for damages. The majority has found that the co-employee is subject to suit.

Believing that the majority has, contrary to the established law of this State, contrary to weight of judicial authority in other jurisdictions and, in fact, without precedent in this nation, expanded the exclusion from coverage under our Workers' Compensation Act, I respectfully dissent. It appears that this is the first case in the nation to extend the exclusion from the exclusivity of the Workers' Compensation Act to negligent acts of co-employees. I believe this broad extension is unwise and will result in a proliferation of suits by employees against fellow employees anytime there is insurance coverage available or the negligent employee can satisfy a judgment and there is the slightest possibility that a jury might find that acts of horseplay were willfully or recklessly committed. Because of the limited benefits available to the work-

er under the Act, employees will find themselves subject to suit and personal liability for money judgments the responsibility for which ought rightfully to be absorbed by industry and not by the worker.

Our Workers' Compensation Act was a statutory compromise. The benefits to employers are not pertinent here. The employee is assured that if he sustains injury arising out of and in the course of his employment he will be compensated without having to prove negligence on the part of the employer. Also, as a part of the trade-off for the employer's loss of common law defenses, the employee gave up his right to bring common law suits and to recover judgments against the employer *and his fellow employees. See* 2 A. Larson, The Law of Workmen's Compensation § 72.20 (1983) (hereafter cited as Larson); *Smith v. Liberty Mut. Ins. Co.*, 409 F. Supp. 1211 (M.D.N.C. 1976). The employee's loss of his right to common law suits against the employer is expressed in the exclusivity section of the Act, which states in pertinent part:

> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee . . . shall exclude all other rights and remedies of the employee . . . as against the employer at common law otherwise on account of such injury or death.

N.C.G.S. § 97-10.1. This Court has recognized and enforced this exclusivity. *Wesley v. Lea*, 252 N.C. 540, 114 S.E. 2d 350 (1960); *Lovette v. Lloyd*, 236 N.C. 663, 73 S.E. 2d 886 (1953). N.C.G.S. § 97-9 provides in pertinent part:

> Every employer subject to the compensation provisions of this Article shall secure the payment of compensation to his employees . . . and while such security remains in force, he or *those conducting his business* shall only be liable to any employee for personal injury or death . . . in the manner herein specified. (Emphasis added.)

In *Altman v. Sanders*, 267 N.C. 158, 148 S.E. 2d 21 (1966) we interpreted the phrase "those conducting his business" to include fellow employees. The courts of North Carolina have interpreted N.C.G.S. § 97-10.1, together with N.C.G.S. § 97-9, to be a

statutory abrogation of the employee's right to sue his fellow employee. Fellow employees are excluded from common law negligence liability. *Wesley v. Lea,* 252 N.C. 540, 114 S.E. 2d 350. *See also Smith v. Liberty Mut. Ins. Co.,* 409 F. Supp. 1211. N.C.G.S. § 97-10.2, relating to actions against third parties, has been held inapplicable to the negligent co-employee. *Warner v. Leder,* 234 N.C. 727, 69 S.E. 2d 6 (1951).

This Court has recognized that an intentional *assault* by an *employer* removes the *employer* from his common law immunity to common law suits.

> "Where the employer is guilty of felonious or willful assault on an employee he cannot relegate him to the compensation act for recovery. It would be against sound reason to allow the employer deliberately to batter his helper, and then compel the worker to accept moderate workmen's compensation benefits, either from his insurance carrier or from himself as self-insurer. The weight of authority gives the employee the choice of suing the employer at common law or accepting compensation."

*Warner v. Leder,* 234 N.C. at 733-34, 69 S.E. 2d at 10, *quoting* Horovitz, "Injury and Death Under Workmen's Compensation Laws," page 336; *Essick v. Lexington,* 232 N.C. 200, 60 S.E. 2d 106 (1950).

This Court has never held that even an *intentional* tort by a co-employee removes the co-employee from his immunity to common law actions, although it has *intimated* that it might so hold. *Wesley v. Lea,* 252 N.C. 540, 114 S.E. 2d 350; *Warner v. Leder,* 234 N.C. 727, 69 S.E. 2d 6. The Court of Appeals case of *Andrews v. Peters,* 55 N.C. App. 124, 284 S.E. 2d 748 (1981), *disc. rev. denied,* 305 N.C. 395, 290 S.E. 2d 364 (1982) is the only case in this State that has held that an intentional tort amounting to *assaultive misconduct* by a co-employee removes his immunity.

I would have no difficulty if we were merely extending the exclusion from the exclusivity of the Act to co-employees who engage in intentional, willful assaults where *injury is intended* to a fellow employee. I would, however, adhere to the prior rulings of this Court that the Act is the exclusive remedy for negligently caused injuries. I will not vote to extend the exclusion to situa-

tions where the co-employee is merely negligent. Where the employee, as here, intends only to *do the act* and clearly does not intend to *do the injury,* negligence is not eliminated. "[T]he idea of *negligence* is eliminated only when the *injury* or damage *is intentional." Foster v. Hyman,* 197 N.C. 189, 191, 148 S.E. 36, 38 (1929); *Ballew v. R.R.,* 186 N.C. 704, 120 S.E. 334 (1923).

The statement that "We also have said that an injured worker may maintain a tort against a co-employee for intentional injury" for which the majority cites *Wesley v. Lea,* 252 N.C. 540, 114 S.E. 2d 350 is completely misleading. That case did not involve an intentional tort but involved a one car upset resulting from the ordinary negligence of the employee-driver which injured the co-employee-passenger. The paragraph of the *Wesley* opinion from which the majority takes its statement is as follows:

> Plaintiff contends that the conduct of defendant in the operation of the car was not merely negligent, but was reckless and wanton. But to take the case out of the Workmen's Compensation Act the injury to an employee by a co-employee must be intentional. *Warren v. Leder, supra,* at page 733. There is no evidence of any intention on the part of defendant *to injure* plaintiff.

252 N.C. at 545, 114 S.E. 2d at 354. The emphasis points out the distinction I have alluded to in the difference between the intent to do the act as opposed to the intent to actually injure.

The majority opinion will not hurt the employer — he can only gain by recovery of amounts already paid out in benefits. It will harm the employee by subjecting him to civil actions to which he is not now exposed.

Besides overruling established precedent to the contrary without reasons satisfactory to me, the ruling emasculates the exclusivity provision of our Workers' Compensation Act as to co-employees. If such is required by sound public policy that is for the legislature and not for this Court.