JERRY R. BULLINS, SHARON KAY BULLINS, AND JOSEPH W. FREEMAN, JR., GUARDIAN AD LITEM FOR SCOTTY R. BULLINS, PLAINTIFFS V. ABITIBI-PRICE COR-PORATION, FIREMAN'S FUND INSURANCE COMPANY AND ROGER EDWARDS, DEFENDANTS

No. COA95-1382

(Filed 19 November 1996)

**Workers' Compensation § 62 (NCI4th)— employee required to continue working after injury—Woodson claim—no substantial certainty of serious injury**

The trial court properly granted summary judgment for defendants on a *Woodson* claim for damages resulting from injuries plaintiff received after being ordered to work while still suffering from a prior work-related injury where plaintiff had received workers' compensation but alleged that defendants had acted intentionally and with reckless indifference to his safety and included claims of bad faith, emotional distress, and loss of consortium. The evidence showed that the job had been performed the same way for many years without injury, involved typical welding hazards, plaintiff was a certified welder, falling was not a significant hazard of this particular job, and no O.S.H.A. violations were established. Plaintiff's forecast of evidence fails to show that defendants intentionally engaged in misconduct knowing that it was substantially certain to cause serious injury to plaintiff.

**Am Jur 2d, Workers' Compensation §§ 75-79.**

BULLINS v. ABITIBI-PRICE CORP.

[124 N.C. App. 530 (1996)]

Appeal by plaintiffs from order entered 26 September 1995 by Judge Judson D. DeRamus, Jr. in Surry County Superior Court. Heard in the Court of Appeals 11 September 1996.

*Franklin Smith for plaintiffs-appellants.*

*Carruthers & Roth, P.A., by Jack B. Bayliss, Jr., for defendants-appellees.*

WALKER, Judge.

Plaintiffs' evidence tended to show that on 24 December 1990, while Jerry R. Bullins (Bullins) was working for his employer, defendant Abitibi-Price Corporation, he slipped and fell injuring the ribs on his left side. Bullins alleged that upon telling his supervisor, defendant Edwards, of his injuries that Edwards instructed him to continue working. Bullins stated that he continued to work with pain associated with the December fall through 15 April 1991.

Bullins claimed that he was out of work on 22 April 1991 pursuant to doctor's orders, due to his rib injury, when Edwards called him and told him to report to work. After reporting to work, Bullins contended that Edwards ordered him to lift heavy objects which exacerbated his pain. The next day, Edwards asked Bullins and another employee to do some build-up welding in the wood digester tower inside the plant. While welding inside the digester, Bullins contended that he leaned back, lost his balance and fell backwards while his right foot remained hooked, injuring his back.

Bullins has received workers' compensation benefits for injuries sustained during the 23 April 1991 accident. In an opinion and award issued by the Industrial Commission, the parties stipulated the following: (1) The plaintiff sustained an injury by accident arising out of and in the course of employment with defendant-employer on 23 April 1991, (2) As a result of the admittedly compensable injury, the parties entered into a Form 21 Agreement for Compensation . . . plaintiff received temporary total disability compensation from 1 May 1991 through 1 May 1992, (3) A Form 24, Application of Employer or Insurance Carrier to Stop Payment of Compensation, was approved by the Industrial Commission on 19 May 1992 and (4) Plaintiff filed a Form 33, Request for Hearing on 10 June 1992. The Industrial Commission then found, as a conclusion of law, that the plaintiff was entitled to receive thirty weeks of permanent partial disability compensation at the rate of $378.63, pursuant to N.C. Gen. Stat. § 97-31(23).

**BULLINS v. ABITIBI-PRICE CORP.**

[124 N.C. App. 530 (1996)]

Plaintiffs filed this action against defendants to recover for damages resulting from the injuries he received after being ordered to work while still suffering from a prior work-related injury. Further, Bullins alleged that defendants acted intentionally and with reckless indifference to his safety and the complaint also includes claims of bad faith, emotional distress, and loss of consortium. Each of the defendants moved for summary judgment which was granted.

The Workers' Compensation Act provides in N.C. Gen. Stat. § 97-10.1 (1985):

> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.

The Act attempts to implement trade-offs between the rights of employees and their employers. It provides for an injured employee's certain recovery without having to prove employer negligence. *Woodson v. Rowland,* 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991) (*citing Pleasant v. Johnson,* 312 N.C. 710, 325 S.E.2d 244 (1985). In return, the amount of recovery available for work-related injuries is limited by the Act and the employee's right to pursue larger damage awards in civil actions is removed. *Id.* (*citing Pleasant,* 312 N.C. 712, 325 S.E.2d 246-47).

Our Supreme Court has held that these provisions bar a worker from maintaining a common law negligence action against his employer. *See e.g., Lee v. American Enka Corp.,* 212 N.C. 455, 193 S.E. 809 (1937); *Hicks v. Guilford County,* 267 N.C. 364, 148 S.E.2d 240 (1966). However, it was not the intention of the legislature, in cases of intentional torts resulting in injury or death to employees, to completely relieve employers of civil liability. *Woodson,* 329 N.C. 338-39, 407 S.E.2d 227.

Our Supreme Court in *Woodson,* recognized an exception to the previous holdings when it set a standard that, if met by a plaintiff, would abrogate the exclusivity provisions of the Workers' Compensation Act and allow a plaintiff-employee to bring a civil suit against the employer. In *Woodson,* the Court held that to survive a motion of summary judgment, the plaintiff's evidence must be suffi-

cient to show that there was a genuine issue of material fact as to whether these defendants intentionally engaged in misconduct knowing it was substantially certain to cause serious injury or death to the plaintiff and that the plaintiff was seriously injured or killed by that misconduct. The standard requires conduct tantamount to an intentional tort. *Id.* at 341, 407 S.E.2d at 228.

The Court has recently re-emphasized the *Woodson* "substantial certainty" standard in *Mickles v. Duke Power Co.*, 342 N.C. 103, 463 S.E.2d 206 (1995). In *Mickles,* a Duke Power employee fell to his death when a safety snap on a pole strap disengaged from a D-ring on his body belt (a phenomenon known as "roll-out"). *Id.* at 106, 463 S.E.2d at 208. The industry had been aware of the possibility of "roll-out" for years; however, it was a very rare occurrence. *Id.* A North Carolina Department of Labor investigation, conducted after Mickles' fall, found that defendant had known that "manufacturers of fall protection equipment recommended . . . that body belts and pole straps not be used for fall protection because of the potential incompatibility of belts and straps made by different manufacturers," but merely asked its employees to inspect their own equipment while working. *Id.* at 108, 463 S.E.2d at 210. Additionally, an inspection of Mickles' equipment after his death showed that his safety snaps and D-rings were incompatible and that his equipment was " 'certain to fail under the conditions created using [defendant's] standard work procedures.' " *Id.* at 109, 463 S.E.2d at 210. However, the Court stated:

> The forecast of evidence thus indicates only that defendant was aware of the somewhat remote possibility that Mickles' strap would become twisted, slack would be introduced into the strap, and Mickles would then fail to check the connecting snaps and D-rings before leaning against those connections. It falls short of establishing that defendant knew this was substantially certain to occur.

*Id.* at 112, 463 S.E.2d at 212.

Like *Mickles,* the evidence in this case does not show that defendants knew Edwards' conduct was "substantially certain" to cause serious injury or death to the plaintiff. The evidence did show that this build-up welding job had been performed the same way for many years without injury, the job involved typical hazards involved with welding, Bullins was a certified welder, falling was not a significant hazard of this particular job, and no O.S.H.A. violations were established with regard to this job. Therefore, plaintiffs' forecast of evi-

dence fails to show that these defendants intentionally engaged in misconduct knowing that it was substantially certain to cause serious injury to Bullins. Thus, the trial court properly granted summary judgment in favor of the defendants on all plaintiffs' claims.

Affirmed.

Judges EAGLES and McGEE concur.