IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-7

Filed 5 November 2025

Forsyth County, No. 23CV002488-330

GUADALUPE SOLIS-SANTOS, Plaintiff,

v.

JAMES THOMAS LESTER III AND PRIME DEMOLITION AND CONTRACTING, LLC, Defendants.

Appeal by plaintiff from order entered 6 September 2024 by Judge David L. Hall in Forsyth County Superior Court. Heard in the Court of Appeals 12 August 2025.

> *A.G. Linett & Associates, PA, by Adam G. Linett and Eliu F. Mendez, and Hill, Peterson, Carper, Bee & Deitzler, PLLC, by C. Michael Bee, pro hac vice, for plaintiff-appellant.*

> *McAngus Goudelock & Courie, PLLC, by Luke A. Dalton, for defendants-appellees.*

ZACHARY, Judge.

Plaintiff Guadalupe Solis-Santos appeals from the trial court's order granting Defendants James Thomas Lester, III, and Prime Demolition and Contracting, LLC's motion to dismiss Plaintiff's amended complaint with prejudice pursuant to N.C. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. We conclude that the trial court properly determined that the Workers' Compensation Act provided the exclusive remedy for Plaintiff's workplace injuries, thereby depriving the court of subject-

matter jurisdiction over Plaintiff's civil claims. However, the court erred by dismissing Plaintiff's amended complaint with prejudice. After careful review, we affirm in part but vacate that portion of the trial court's order dismissing Plaintiff's amended complaint with prejudice and remand for entry of an order dismissing Plaintiff's amended complaint without prejudice.

## I.     Background

Global Environmental Control III, Inc. ("Global") is a staffing company that provides temporary workers with skilled-labor specialties to other companies. Prime Demolition and Contracting, LLC ("Prime Demolition") is a company that focuses on structural demolition and interior strip-outs.

In November 2019, Global and Prime Demolition entered into a General Staffing Agreement ("the Staffing Agreement") pursuant to which Global would provide Prime Demolition with skilled temporary employees upon request. The Staffing Agreement provided, *inter alia*, that Global would assign employees to Prime Demolition; pay the assigned employees' wages and provide benefits; and "handle unemployment and workers' compensation claims involving [a]ssigned [e]mployees." Prime Demolition would "[p]roperly supervise [a]ssigned [e]mployees performing its work" and "[p]roperly supervise, control, and safeguard its premises, processes, or systems."

In 2021, a third party contracted with Prime Demolition for a project that involved conducting an interior strip-out of a former skating rink in order to convert

it to a school. To meet its labor needs, Prime Demolition requested temporary workers from Global to assist in the requisite demolition work. In response to the request, Global directed multiple employees—including Plaintiff—to the Prime Demolition project site. Plaintiff is certified in demolition work and asbestos removal.

On 8 March 2021, while working at the job site, Plaintiff was instructed to assist in transporting a tall metal light tower that an electrician had left on the skating-rink floor. Prime Demolition employee James Thomas Lester, III, used a skid steer to move the light tower while Plaintiff held the light tower steady. As Lester slowly moved the light tower forward, Plaintiff released his grip on it to move some cables on the floor. The light tower then toppled from the skid steer. The light tower hit Plaintiff on his head and left side, knocking him to the ground. Plaintiff suffered serious injuries and sought medical care.

On 25 October 2021, the North Carolina Industrial Commission approved the settlement agreement resolving Plaintiff's workers' compensation claim against Global for $67,500.

On 17 May 2023, Plaintiff filed a complaint against Prime Demolition and Defendant Johnny Welker alleging negligence; gross negligence; negligent hiring, supervision, or retention; and a *Pleasant* claim. On 27 July 2023, Johnny Welker and Prime Demolition each filed an answer. In September 2023, Plaintiff filed a motion for leave to amend his complaint to name James Thomas Lester, III, as a defendant, to remove Johnny Welker as a defendant, and to correct the address at which the

incident occurred. The trial court entered a consent order on 28 September 2023 granting Plaintiff's motion and Plaintiff filed his amended complaint the next day.

Prime Demolition and Defendant James Thomas Lester, III, each filed an answer to Plaintiff's amended complaint on 8 November 2023. On 21 December 2023, Plaintiff voluntarily dismissed his complaint against Johnny Welker.

On 13 August 2024, Defendants filed a motion to dismiss Plaintiff's amended complaint pursuant to N.C. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction "due to the exclusivity of the North Carolina Workers Compensation Act." The motion to dismiss came on for hearing in Forsyth County Superior Court on 19 August 2024. On 6 September 2024, the trial court entered an order granting Defendants' motion to dismiss and dismissing Plaintiff's amended complaint with prejudice.

Plaintiff timely filed notice of appeal.

## II. Discussion

Plaintiff argues that the trial court erred by granting Defendants' Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. Plaintiff contends that his claims are not barred by the exclusivity provision of the Workers' Compensation Act in that he was not an employee of Prime Demolition; he was not a coworker of Lester; and even if he were, Lester engaged in willful, wanton, or reckless conduct at the job site, causing Plaintiff's injuries and entitling him to pursue his *Pleasant* claim. We disagree.

### A. Standard of Review

"An appellate court's review of an order of the trial court denying or allowing a Rule 12(b)(1) motion is de novo, except to the extent the trial court resolve[d] issues of fact, and those findings are binding on the appellate court if supported by competent evidence in the record." *Cunningham v. Selman*, 201 N.C. App. 270, 280, 689 S.E.2d 517, 524 (2009) (cleaned up).

"Unlike a Rule 12(b)(6) dismissal, the court need not confine its evaluation of a Rule 12(b)(1) motion to the face of the pleadings, but may review or accept any evidence, such as affidavits, or it may hold an evidentiary hearing." *Bassiri v. Pilling*, 287 N.C. App. 538, 543, 884 S.E.2d 165, 169 (2023) (citation omitted). "Also, unlike a Rule 12(b)(6) motion, consideration of matters outside the pleadings does not convert the Rule 12(b)(1) motion to one for summary judgment." *Id.* at 543–44, 884 S.E.2d at 169 (cleaned up).

**B. Special-Employee Doctrine**

Plaintiff first argues that "the trial court erred in granting Defendants' motion to dismiss for lack of subject[-]matter jurisdiction in finding that [he] was an employee of Defendant Prime Demolition," thereby limiting Plaintiff's remedies to those provided under the Workers' Compensation Act.

"The issue of whether [a] plaintiff's claim is barred by the Workers' Compensation Act is a question of subject[-]matter jurisdiction." *McAllister v. Cone Mills Corp.*, 88 N.C. App. 577, 579, 364 S.E.2d 186, 188 (1988). As our Supreme Court has noted, "[t]he [s]uperior [c]ourt is a court of general jurisdiction and has

jurisdiction in all actions for personal injuries caused by negligence, except where its jurisdiction is divested by statute." *Morse v. Curtis*, 276 N.C. 371, 374–75, 172 S.E.2d 495, 498 (1970); *see also* N.C. Gen. Stat. § 7A-240 (2023). "By statute the [s]uperior [c]ourt is divested of original jurisdiction of all actions which come within the provisions of the [Workers'] Compensation Act." *Morse*, 276 N.C. at 375, 172 S.E.2d at 498. Thus, "[i]n general, the provisions of the Workers' Compensation Act are the exclusive remedy in the event of an employee's injury by accident in connection with his or her employment." *Fagundes v. Ammons Dev. Grp., Inc.*, 251 N.C. App. 735, 737, 796 S.E.2d 529, 532 (cleaned up), *disc. review denied*, 370 N.C. 66, 803 S.E.2d 626 (2017); *see also* N.C. Gen. Stat. § 97-10.1.

The Act defines the term "employee" as including "every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written." N.C. Gen. Stat. § 97-2(2). Our Court has determined that "special employees" may be treated the same as workers who meet the Act's definition of "employee." *Collins v. James Paul Edwards, Inc.*, 21 N.C. App. 455, 459, 204 S.E.2d 873, 876–77, *cert. denied*, 285 N.C. 589, 206 S.E.2d 862 (1974). As such, special employees and employees are similarly subject to the jurisdictional limitations of the Act's exclusivity provision. *Id.*

Under the special-employee doctrine, "a general employee of one [employer] can also be the special employee of another [employer] while doing the latter's work and under his control." *Brown v. Friday Servs., Inc.*, 119 N.C. App. 753, 759, 460

S.E.2d 356, 360 (citation omitted), *disc. review denied*, 342 N.C. 191, 463 S.E.2d 234 (1995). The employer and special employer then have joint liability under the Act, which "provides the plaintiff-employee with two separate potential sources of workers' compensation benefits. However, under the special employment doctrine, the employee's receipt of workers' compensation benefits from either employer bars the employee from proceeding at common law against either of the employers." *Taft v. Brinley's Grading Servs., Inc.*, 225 N.C. App. 502, 506, 738 S.E.2d 741, 744 (2013) (citations omitted).

Our Court has applied the three-prong *Collins* test for determining whether a worker is a special employee under the employ of a special employer:

> (a)    the employee has made a contract of hire, express or implied, with the special employer;
>
> (b)    the work being done is essentially that of the special employer; and
>
> (c)    the special employer has the right to control the details of the work.

*Whicker v. Compass Grp. USA, Inc.*, 246 N.C. App. 791, 797, 784 S.E.2d 564, 569, *disc. review denied*, 369 N.C. 69, 793 S.E.2d 228 (2016); *see also Collins*, 21 N.C. App. at 459, 204 S.E.2d at 876.

In the present case, Plaintiff asserts that "[u]nder the facts of this particular case, particularly in light of the detailed [Staffing Agreement], it is clear that Prime [Demolition] cannot claim the exclusivity provisions of the [Workers' Compensation]

Act as [Plaintiff's] 'special employer.' " We disagree.

### 1. First Prong of the Collins *Test: Express or Implied Contract*

"As our Supreme Court has observed, employment . . . is a matter of contract." *Shelton v. Steelcase, Inc.*, 197 N.C. App. 404, 413, 677 S.E.2d 485, 493 (cleaned up), *disc. review denied*, 363 N.C. 583, 682 S.E.2d 389 (2009). In the case at bar, it is undisputed that there was no express contract of hire between Plaintiff and Prime Demolition. Accordingly, the issue is limited at this juncture to whether there was an implied contract of hire between Plaintiff and Prime Demolition.

"An implied contract refers to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding." *Whicker*, 246 N.C. App. at 798, 784 S.E.2d at 570 (citation omitted). This Court has concluded that an implied contract existed between an employee and a special employer where the employee "accepted the assignment from [the temporary employment agency] and performed the work at the direction and under the supervision of [the special employer]." *Brown*, 119 N.C. App. at 760, 460 S.E.2d at 360.

Here, Plaintiff maintains that the Staffing Agreement supports his contention that he was not a special employee of Prime Demolition. However, in the cases cited by Plaintiff, the contracts expressly provided that the worker in question was employed *solely by the general employer*. *See Taft*, 225 N.C. App. at 508, 738 S.E.2d at 745–46 (where the express contract stated that "all of the personnel assigned by

- 8 -

[the general employer] to [the special employer]'s business in order to fill the relevant job positions are employees of [the general employer] and only [the general employer]" and the president of the special employer "conceded that, pursuant to the [express contract], [the plaintiff] was solely an employee of [the general employer]"); *Gregory v. Pearson*, 224 N.C. App. 580, 586, 736 S.E.2d 577, 581 (2012) (where the express contract stated that "temporary employees are not employees of the [special employer]"), *aff'd and ordered not precedential*, 367 N.C. 315, 754 S.E.2d 416 (2014)[1]; and *Shelton*, 197 N.C. App. at 412, 677 S.E.2d at 492 (where the express contract between the general employer and special employer stated that workers "will be employees of the [general employer]" and the "record contain[ed] extensive evidence from various witnesses, including [the special employer]'s Human Resources Manager, identifying [the plaintiff] as an employee of [the general employer] and not an employee of [the special employer]").

In the instant case, there is no contractual provision declaring that Plaintiff was *solely* the employee of Global. The Staffing Agreement did not expressly retain the temporary employees as Global's employees or preclude them from also being employed by Prime Demolition. Plaintiff accepted an assignment to work for and under the supervision of Prime Demolition. Consequently, there was competent

---

[1] We note that, in addition to *Gregory*'s factual inapplicability to the case before us, our Supreme Court has held that the decision in *Gregory* "stands without precedential value." *Gregory v. Pearson*, 367 N.C. 315, 316, 754 S.E.2d 416, 416 (2014). Plaintiff's reliance upon *Gregory* is thus wholly inapposite.

evidence supporting the trial court's finding that an implied contract existed between Plaintiff and Prime Demolition.

Moreover, the record contains ample other evidence that Plaintiff and Prime Demolition had an implied employment contract. The owner/managing member of Prime Demolition provided an affidavit in which he stated: "On March 8, 2021, Plaintiff was performing work for Prime [Demolition] at the Project pursuant to an implied contract with Prime" Demolition. Additionally, in a deposition, Prime Demolition's owner/managing member answered affirmatively when asked: "Did you have any type of implied contract with [Plaintiff]?" and again confirmed that "Prime [Demolition] had [an] implied contract with [P]laintiff . . . on those days for that work."

Accordingly, we conclude that there was competent evidence to support the trial court's finding that "Plaintiff performed work for Prime [Demolition] at the Project pursuant to an implied contract with Prime" Demolition.

### 2. *Second Prong of the* Collins *Test: Type of Work*

The second prong of the *Collins* test requires that "the work being done is essentially that of the special employer." *Collins*, 21 N.C. App. at 459, 204 S.E.2d at 876 (citation omitted). Here, it is uncontested that Plaintiff was injured while working for Prime Demolition at the Prime Demolition job site. Thus, the second prong of the *Collins* test was satisfied as regards Plaintiff's special-employee status.

### 3. *Third Prong of the* Collins *Test: Control Over Work*

Plaintiff next contends that Prime Demolition's "limited supervision" of him was "insufficient" to meet the third prong of the *Collins* test.

As stated above, the third prong of the *Collins* test is whether "the special employer has the right to control the details of the work." *Whicker*, 246 N.C. App. at 797, 784 S.E.2d at 569 (citation omitted). "This Court has stressed that the third prong, control of *the detail* of the work, may be the most significant." *Shelton*, 197 N.C. App. at 412, 677 S.E.2d at 492 (cleaned up); *see also Hayes v. Bd. of Trs. of Elon College*, 224 N.C. 11, 15, 29 S.E.2d 137, 140 (1944) ("The vital test is to be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details.").

The Staffing Agreement provided that Prime Demolition would:

    a. Properly supervise [a]ssigned [e]mployees performing its work and be responsible for its business operations, products, services, and intellectual property;

    b. Properly supervise, control, and safeguard its premises, processes, or systems, and not permit [a]ssigned [e]mployees to operate any vehicle or mobile equipment, or entrust them with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables without [Global]'s express prior written approval or as strictly required by the job description provided to [Global];

    c. Provide [a]ssigned [e]mployees with a safe work site and provide appropriate information, training, and safety equipment with respect to any hazardous substances or conditions to which they may be exposed at the work site.

A former Global office manager explained that Prime Demolition had control over Plaintiff while he was at Prime Demolition's job site:

> Q. Once a worker is sent to the client, to the job site, does that -- let's talk about Prime [Demolition]. Does Prime [Demolition] then have control in managing that worker, dictating what work is done, directing that worker to do certain job responsibilities?
>
>      . . . .
>
> [A.] Yes, sir.
>
> Q. Does Global have any say in what work is done at a specific job site?
>
>      . . . .
>
> [A.] No.
>
> Q. Okay. So, to be clear, [Plaintiff] was sent to the job site where Prime [Demolition] was working to do demo work, correct?
>
> A. Yes, sir.
>
> Q. Okay. When he was sent, did Global direct [Plaintiff] to do any specific demo work that day?
>
> A. No, sir.
>
> Q. Did Global direct [Plaintiff] to do any type of demo work anywhere on that job site?
>
> A. No, sir.
>
> Q. *The direction, control, and supervision* would have been by Prime [Demolition] to do that demo work at the job site?

A. Yes, sir.

. . . .

Q. Was it Global's understanding that once the worker was sent to a job site that the client, such as Prime [Demolition], would have *direct control and supervision* over that employee while that worker was doing the specific type of work they were looking for?

. . . .

[A.] Yes, sir.

. . . .

Q. Since you had worked with Prime [Demolition] before while at Global, did you trust that Prime [Demolition] was *properly supervising, controlling, directing* the employees to do the proper work that they were retained to do or staffed to do?

. . . .

[A.] Yes, sir.

(Emphases added).

The owner/managing member of Prime Demolition testified at a deposition that Plaintiff "was just sent from Global as a laborer that we could use at our *control or direction*" and clarified that while Prime Demolition could not fire Plaintiff from Global, it "*had the authority to control* [its] particular job sites." (Emphases added). When asked whether "Prime [Demolition] *had the ability to control the details* of [Plaintiff]'s work," the owner/managing member responded: "Correct." (Emphasis added). The owner/managing member of Prime Demolition also stated in an affidavit

that Plaintiff was loaned to Prime Demolition "to perform demolition work for Prime [Demolition] at the Project *under [Prime Demolition]'s direction and control.*" (Emphasis added). At her deposition, Plaintiff's wife confirmed that she and her husband were "acting *under the supervision and control* of Prime Demolition" on 8 March 2021. (Emphasis added).

Here, there was plentiful evidence that the third prong of the *Collins* test was satisfied—that Prime Demolition had "the right to control the details of the work" that Plaintiff performed. *Whicker*, 246 N.C. App. at 797, 784 S.E.2d at 569 (citation omitted). Accordingly, we conclude that the third prong of the *Collins* test was satisfied, and the trial court did not err in its findings that Plaintiff performed his work on 8 March 2021 under Prime Demolition's control.

Having satisfied the three prongs of the *Collins* test, we conclude that the court's findings of fact as to Prime Demolition's special-employer status are supported by competent evidence of record. The trial court did not err in determining that "Prime [Demolition] was Plaintiff's special employer," or that Plaintiff's remedies were limited to those provided by the Workers' Compensation Act. Therefore, the trial court lacked subject-matter jurisdiction over Plaintiff's claims against Prime Demolition.

### C. Claims Against Coworker

Plaintiff also argues that "the trial court erred in dismissing [his] claims

against Defendant James Thomas Lester III."[2] Plaintiff first contends that because Prime Demolition was not his employer, Lester was not his co-employee and hence, Plaintiff's "negligence claims against . . . Lester were improperly dismissed." In the alternative, Plaintiff contends that if he and Lester were co-employees, the court erred by dismissing Plaintiff's *Pleasant* claim against Lester. We disagree.

To begin, the trial court properly determined that Prime Demolition was Plaintiff's special employer. There is no dispute that Lester was an employee of Prime Demolition. Thus, Plaintiff and Lester were co-employees when Plaintiff was injured at the Prime Demolition job site and Plaintiff's remedies were limited to those provided by the Workers' Compensation Act unless he could sufficiently allege a *Pleasant* claim.

Generally, the Workers' Compensation Act provides the exclusive remedy for an injured worker's workplace injuries. *Fagundes*, 251 N.C. App. at 737, 796 S.E.2d at 532. One "exception arises when a co-employee acts in a willful, wanton, and reckless manner"; in such cases, "an injured plaintiff [may] seek recovery from the co-employee in a common law action." *Trivette v. Yount*, 366 N.C. 303, 306, 735 S.E.2d 306, 308 (2012) (citing *Pleasant v. Johnson*, 312 N.C. 710, 716–17, 325 S.E.2d 244,

---

[2] In his amended complaint, Plaintiff also brought a *Pleasant* claim against Prime Demolition, asserting that Lester "engaged in willful, wanton, and reckless conduct" and that "his actions are therefore imputed to Defendant [Prime Demolition] under the principles of agency and the theory of *respondeat superior*." However, Plaintiff does not challenge the trial court's dismissal of his *Pleasant* claim against Prime Demolition on appeal. Accordingly, any *Pleasant* claim against Prime Demolition is abandoned and will not be addressed. *See* N.C.R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

249–50 (1985)). However, a plaintiff "must clear a high bar in alleging and proving such a claim." *Est. of Baker v. Reinhardt*, 288 N.C. App. 529, 536, 887 S.E.2d 437, 444 (2023) (cleaned up).

In *Pleasant*, the plaintiff and the defendant were employees of the same company. 312 N.C. at 711, 325 S.E.2d at 246. One day, as the plaintiff was walking across a parking lot toward the employer's job site, a truck driven by the defendant struck the plaintiff and seriously injured his right knee. *Id.* The plaintiff received disability benefits under the Workers' Compensation Act and then filed an action against the defendant, claiming that his co-employee was "willfully, recklessly and wantonly negligent" in causing the plaintiff's injuries. *Id.* Our Supreme Court held: "[T]he Workers' Compensation Act does not shield a co-employee from liability for injury caused by his willful, wanton and reckless negligence." *Id.* at 717, 325 S.E.2d at 249. The Court defined "wanton" and "reckless" conduct as that which "manifest[s] a reckless disregard for the rights and safety of others" and "willful negligence" as "the intentional failure to carry out some duty imposed by law or contract which is necessary to the safety of the person or property to which it is owed." *Id.* at 714, 325 S.E.2d at 248.

"The burden of proof is heavy on a plaintiff who seeks to recover under *Pleasant*. Even unquestionably negligent behavior rarely meets the high standard of 'willful, wanton and reckless' negligence established in *Pleasant*." *Fagundes*, 251 N.C. App. at 740, 796 S.E.2d at 534 (cleaned up). "In short, the negligence exhibited must

be so gross as to be 'equivalent in spirit to actual intent.' " *Baker*, 288 N.C. App. at 536, 887 S.E.2d at 443 (cleaned up).

In the case before us, Plaintiff and Lester were both working for Prime Demolition at the job site on 8 March 2021. Plaintiff was directed to assist in moving a metal light tower. While Plaintiff steadied the light tower, Lester used a skid steer to lift it. As Lester slowly moved the light tower forward, Plaintiff released his hold on the tower to move some cables on the floor. The light tower then fell and struck Plaintiff on his head and the left side of his body. Plaintiff was knocked to the ground and suffered serious injuries.

Essentially, Plaintiff's purported *Pleasant* claim sounds in negligence, and thus fails to rise to the level of a *Pleasant* claim. Plaintiff presents the following as evidence of Lester's willful, wanton, and reckless negligence: 1) Lester admitted that he had never read the operating manual for the skid steer, "he was not given any instruction on its operation, and he had not watched any training videos regarding its operation"; 2) "Lester stated that formal training classes in skid steer operations are not required"; 3) the only training that Lester received for operating a skid steer "was on-the-job training"; and 4) Lester was not provided guidelines or procedures on securing a load to the skid steer and admitted that he did not secure the metal light tower before moving it.

But "[e]ven if we take this evidence, accurately described, in the light most favorable to Plaintiff, it falls short of showing negligence so egregious as to be

equivalent in spirit to actual intent." *Id.* at 541, 887 S.E.2d at 446 (cleaned up). Plaintiff presents no evidence that Lester was aware of any danger posed by moving the metal light tower with the skid steer, and even if he had presented such evidence, "[k]nowledge of a dangerous hazard, standing alone, does not establish a viable claim under *Pleasant.*" *Id.* at 542, 887 S.E.2d at 447. Hence, the Act provides the exclusive remedy for Plaintiff's civil claims, and "the trial court did not err by dismissing Plaintiff's claim[s] . . . for lack of subject[-]matter jurisdiction." *Cunningham*, 201 N.C. App. at 288–89, 689 S.E.2d at 529.

**D. Dismissal with Prejudice**

The trial court properly dismissed Plaintiff's amended complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). However, as our Supreme Court has explained, "when a complaint is dismissed for lack of subject[-]matter jurisdiction, that decision does *not* result in a final judgment on the merits and does not bar further action by the plaintiff on the same claim." *United Daughters of the Confederacy, N.C. Div. v. City of Winston-Salem*, 383 N.C. 612, 650, 881 S.E.2d 32, 60 (2022). Accordingly, "a dismissal under Rule 12(b)(1) must be made without prejudice, since a trial court without jurisdiction would lack authority to adjudicate the matter." *Holton v. Holton*, 258 N.C. App. 408, 415, 813 S.E.2d 649, 655 (2018).

In the present case, the trial court dismissed the amended complaint on the basis of its determination that, because the Workers' Compensation Act provided the exclusive remedy for Plaintiff's claims, the court lacked jurisdiction over the subject

matter of Plaintiff's claims. "[H]aving properly determined that it lacked subject-matter jurisdiction over the matter, the trial court should have dismissed the matter without prejudice pursuant to Rule 12(b)(1)." *Pugh v. Howard*, 288 N.C. App. 576, 588, 887 S.E.2d 734, 744 (2023). "As a result, we vacate the portion of the trial court's order dismissing the amended complaint with prejudice and remand this case to Superior Court, Forsyth County, with instructions to dismiss the amended complaint *without*, rather than with, prejudice." *United Daughters of the Confederacy*, 383 N.C. at 650, 881 S.E.2d at 60.

## III.    Conclusion

For the foregoing reasons, we conclude that the trial court properly dismissed Plaintiff's amended complaint pursuant to Rule 12(b)(1) but erred by dismissing Plaintiff's amended complaint with prejudice. We therefore affirm in part but vacate that portion of the trial court's order dismissing the amended complaint with prejudice and remand for entry of an order dismissing the amended complaint without prejudice.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

Judges HAMPSON and MURRY concur.