PAUL CHRISTOPHER BLOW, Plaintiff v. DSM PHARMACEUTICALS, INC., formerly CATALYTICA PHARMACEUTICALS, INC., EASTERN OMNI CONSTRUCTORS, INC., THE GREENWOOD GROUP, INC. d/b/a MANPOWER TEMPORARY SERVICES, Defendants

No. COA08-1500

(Filed 16 June 2009)

**Workers' Compensation— workplace accident—*Woodson* claim—not adequately pled**

The trial court did not err by granting defendant's Rule 12(b)(6) motion to dismiss in a workplace negligence action. Plaintiff did not adequately plead a *Woodson* claim falling outside the Workers' Compensation Act, and the trial court did not have subject matter jurisdiction.

Appeal by plaintiff from an order entered 16 March 2006 by Judge Jack W. Jenkins in Pitt County Superior Court. Heard in the Court of Appeals 20 May 2009.

*McDonald Law Offices, P.C., by Demyra R. McDonald, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Mark A. Ash and J. Mitchell Armbruster, for defendant-appellee.*

JACKSON, Judge.

Paul Christopher Blow ("plaintiff") appeals the 16 March 2006 dismissal of his suit against DSM Pharmaceuticals, Inc. ("defendant"). For the reasons stated below, we affirm.

In August 1999, plaintiff was a temporary employee of The Greenwood Group d/b/a Manpower Temporary Services ("Manpower") working as a chemical processor at defendant's plant. Defendant was a pharmaceuticals manufacturer or processor of chemicals for the production of pharmaceuticals. As part of its operations, defendant maintained and operated a Bulk Bromine Storage/Handling System ("bromine system"). Bromine is a highly toxic and lethal chemical element that defendant used to manufacture one of the pharmaceuticals it produced. Its transportation, storage, handling, and processing are highly regulated to protect workers and the general public from its hazardous properties.

BLOW v. DSM PHARMS., INC.

[197 N.C. App. 586 (2009)]

Due to minor leaks caused by vibrations, defendant and Eastern Omni Constructors, Inc. ("Eastern Omni")—its design consultants—decided to replace a section of transfer line with Multiflex hose rated at 625 pounds of pressure per square inch *("psi")*. However, what actually was installed was Ultraflex hose rated at 300 *psi*. An inspection of the bromine system by an independent chemical engineering consultant revealed that "certain features of the system must be considered hazardous at worst and probably poor practice at best." On 15 August 1999, the Ultraflex hose ruptured, releasing approximately 360 gallons of liquid bromine.

Plaintiff arrived at work that evening approximately fifteen minutes after the bromine spill. There were no warnings of the danger posed by the bromine spill. As plaintiff approached the building where he would have changed into work-appropriate attire, he experienced difficulty breathing; burning sensations in his nose, throat and chest; and eye irritation. Upon entering the building, he experienced more difficulty breathing, burning sensations, and eye irritation. Plaintiff managed to exit the building and escaped the area with the assistance of a fellow employee. He was transported to Pitt County Memorial Hospital where he was hospitalized for two days due to exposure to bromine gas and vapors. Plaintiff alleges he suffered permanent injuries as a result of the exposure to bromine gas at defendant's plant.

On 5 September 2005, plaintiff filed a complaint against defendant, Eastern Omni, and Manpower alleging gross negligence, negligence, and infliction of emotional distress. Subsequently, plaintiff filed a voluntary dismissal with prejudice as to Manpower.

On 4 November 2005, defendant filed a motion to dismiss plaintiff's complaint pursuant to North Carolina Rules of Civil Procedure Rule 12(b)(1) and Rule 12(b)(6) alleging (1) lack of subject matter jurisdiction because plaintiff's claims were barred by the exclusivity of the Workers' Compensation Act ("the Act"), and (2) plaintiff's allegations failed to state a claim falling outside the Act pursuant to *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), an exception to the Act's exclusivity. On 16 March 2006, the trial court granted defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. Plaintiff appealed.

This Court dismissed plaintiff's appeal as interlocutory on 17 April 2007. *See Blow v. DSM Pharmaceuticals, Inc.*, 182 N.C. App.

765, 643 S.E.2d 83 (2007) (unpublished). On 5 September 2008, plaintiff filed a voluntary dismissal with prejudice as to Eastern Omni. Plaintiff now appeals the trial court's final judgment.

Plaintiff asserts two interrelated assignments of error: (1) that the trial court erred in dismissing his complaint based upon a lack of subject matter jurisdiction, and (2) that the trial court erred in dismissing his complaint based upon a failure to state a claim upon which relief can be granted. We disagree.

We review a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure *de novo. Hatcher v. Harrah's N.C. Casino Co., LLC*, 169 N.C. App. 151, 155, 610 S.E.2d 210, 212 (2005) (citation omitted). Pursuant to the *de novo* standard of review, "the court considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re Appeal of the Greens of Pine Glen Ltd. Part.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citing *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002)).

> On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory."

*Block v. County of Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (quoting *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). A complaint is properly dismissed pursuant to Rule 12(b)(6) when (1) the complaint, on its face, reveals that no law supports the plaintiff's claim; (2) the complaint, on its face, reveals an absence of facts sufficient to make a good claim; or (3) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Johnson v. Bollinger*, 86 N.C. App. 1, 4, 356 S.E.2d 378, 380 (1987).

The rights and remedies granted to an employee by the Act "shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of [an] injury or death." N.C. Gen. Stat. § 97-10.1 (2007). In exchange for the "limited but assured benefits" of the Act, "the employee is generally barred from suing the employer for potentially larger damages in civil negligence actions and is instead limited exclusively to those remedies set forth in the Act." *Whitaker v. Town of Scotland Neck*, 357 N.C. 552,

556, 597 S.E.2d 665, 667 (2003) (citing *Pleasant v. Johnson*, 312 N.C. 710, 712, 325 S.E.2d 244, 246-47 (1985); *Woodson*, 329 N.C. at 338, 407 S.E.2d at 227).

However,

> [w]hen an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

*Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228. "This exception applies only in the most egregious cases of employer misconduct. Such circumstances exist where there is uncontroverted evidence of the employer's *intentional* misconduct and where such misconduct is substantially certain to lead to the employee's serious injury or death." *Whitaker*, 357 N.C. at 557, 597 S.E.2d at 668 (emphasis added). "We made it clear in [*Woodson*] that there had to be a higher degree of negligence than willful, wanton and reckless negligence as defined in *Pleasant* [*v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985)]" to maintain a claim in tort against an employer, when the parties are subject to the Act. *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 239, 424 S.E.2d 391, 395 (1993). "The elements of a *Woodson* claim are: (1) misconduct by the employer; (2) intentionally engaged in; (3) with the knowledge that the misconduct is substantially certain to cause serious injury or death to an employee; and (4) that employee is injured as a consequence of the misconduct." *Pastva v. Naegele Outdoor Advertising*, 121 N.C. App. 656, 659, 468 S.E.2d 491, 494 (1996) (citing *Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228).

Due to the exclusivity of the Act, in order for plaintiff to succeed on defendant's motion to dismiss pursuant to Rule 12(b)(1), plaintiff must have adequately pled a *Woodson* claim pursuant to Rule 12(b)(6). Accordingly, we address this aspect of plaintiff's appeal first.

Although it may be possible to cobble together the necessary allegations for a *Woodson* claim from the complaint, essentially, plaintiff's claim is one for negligence which fails to rise to the level of a valid *Woodson* claim. In attempting to meet the required *Woodson* elements, the complaint alleges generally that (1) defendant failed to

comply with governmental safety standards; (2) defendant acted wilfully, wantonly, with reckless disregard, and constructive intent; (3) defendant "knew or should have known that it was foreseeable that if [it] failed to comply . . . there was a substantial certainty that a cata-strophic [bromine spill] would result in the serious bodily injury or death of its employees (including [plaintiff])[;]" and (4) plaintiff was seriously injured as a result.

Plaintiff has failed to allege "a higher degree of negligence than willful, wanton and reckless negligence as defined in *Pleasant*." *See Pendergrass*, 333 N.C. at 239, 424 S.E.2d at 395. "[S]imply having knowledge of some possibility, or even probability, of injury or death is not the same as knowledge of a substantial certainty of injury or death." *Whitaker*, 357 N.C. at 558, 597 S.E.2d at 669. As was true in *Whitaker*, "[t]he facts of this case involve defective equipment and human error that amount to an accident rather than intentional misconduct." *Id.*

The bromine system began operating in July 1998. The Ultraflex hose that ruptured was installed in November 1998. The consultant prepared his report in April 1999. The objectives of the report were to bring problems in the bromine system to defendant's attention "and to recommend modifications to reduce the hazards" posed by those problems. The report failed to inform defendant that a catastrophic bromine spill was substantially certain to occur as a result of the Ultraflex hose, or any other of the problem components of the bromine system.

With respect to the transfer lines for which the Ultraflex hose was used, the report noted that failure "can create catastrophic [bromine] emission." There was a "potential" of fatigue failure and "water hammer" impact. Although the excessive size and weakness of the transfer lines posed a "serious hazard," the consultant did not recommend immediate replacement to a safer material; he recommended that all new transfer line installations be to the safer material, while only replacing older lines "as opportunities permit" or "as maintenance costs or failures justify." These statements are not sufficient to put defendant on notice of an impending catastrophic bromine spill.

Soon after the incident, The North Carolina Department of Labor, Division of Occupational Safety and Health conducted an investigation, finding thirty-one state and federal safety and health violations, including, but not limited to, failure to have adequate emergency action plans, failure to have complete process safety information, and

failure to have an adequate process hazard analysis. It found twenty-four "serious" violations and seven "unclassified" violations; not one of the violations was deemed to be "willful" or a "repeat" violation. The North Carolina Division of Air Quality also conducted an investigation after the incident. It found, *inter alia*, that process safety information was incomplete, process hazard analysis was incomplete, mechanical integrity was inadequate, and emergency response was inadequate.

In *Edwards v. GE Lighting Sys., Inc.*, 193 N.C. App. 578, 668 S.E.2d 114 (2008), the evidence tended to show that the defendant company did not adequately maintain its equipment; however, this Court noted that "even a 'knowing failure to provide adequate safety equipment in violation of OSHA regulations [does] not give rise to liability under . . . *Woodson* . . .' " *Id.* at 584, 668 S.E.2d at 118 (quoting *Mickles v. Duke Power Co.*, 342 N.C. 103, 112, 463 S.E.2d 206, 212 (1995)) (alterations in original) (additional citations omitted). This Court also recognized that "[u]nlike the employer in *Woodson*, who had received four citations for violating safety procedures in the six and a half years preceding the incident, [the defendant company] had never been cited by OSHA prior to the accident" for the problems giving rise to the employee's death. *Id. See also Vaughan v. J. P. Taylor Co.*, 114 N.C. App. 651, 654, 442 S.E.2d 538, 540 (1994) (noting that the plaintiff's employer had no prior OSHA citations for safety violations). Finally, this Court noted that although the plaintiff contended that the defendant company "could have done more to ensure its workers' safety, 'the evidence does not show that [the employer] engaged in misconduct *knowing* it was substantially certain to cause death or serious injury.' " *Id.* (quoting *Jones v. Willamette Industries, Inc.*, 120 N.C. App. 591, 595, 463 S.E.2d 294, 297 (1995)) (alterations in original).

Similarly, defendant in the case *sub judice* had not been cited for violations of the bromine system prior to the spill. Although it failed to adequately construct and maintain the bromine system, and failed to implement appropriate safety procedures, defendant did not "engage[] in misconduct *knowing* it was substantially certain to cause death or serious injury," as required to support a *Woodson* claim. *See Jones v. Willamette Industries, Inc.*, 120 N.C. App. 591, 595, 463 S.E.2d 294, 297 (1995).

Because plaintiff failed to adequately plead a *Woodson* claim, the trial court did not err in granting defendant's motion to dismiss pursuant to Rule 12(b)(6). Absent a proper *Woodson* claim, the trial court

had no subject matter jurisdiction to hear plaintiff's claim, because the Act provides an exclusive remedy for injured workers. Accordingly, we affirm the trial court.

Affirmed.

Judges McGEE and ERVIN concur.