IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-372

Filed 04 April 2023

Caswell County, No. 20CVS254

THE ESTATE OF DESMOND JAPRAEL STEPHENS, LARRY F. STEPHENS, ADMINISTRATOR, Plaintiff,

v.

ADP TOTALSOURCE DE IV, INC., MICRON PRECISION, LLC d/b/a KING MACHINE OF NORTH CAROLINA and KORY J. KACHUR, Defendants.

Appeal by Defendants from order entered 20 December 2021 by Judge Stanley L. Allen in Caswell County Superior Court. Heard in the Court of Appeals 19 October 2022.

*Hendrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, G. Anderson Stein, and Tyler A. Stull, for Defendants-Appellants.*

*Law Offices of James Scott Farrin, by Coleman Cowan and Preston W. Lesley, and Law Offices of R. Lee Farmer, PLLC, by R. Lee Farmer, for Plaintiff-Appellee.*

COLLINS, Judge.

Desmond Japrael Stephens was crushed to death at his workplace when part of a 2,000-pound metal tire mold that was elevated by a forklift that had been modified without manufacturer approval fell onto his chest. Plaintiff filed willful negligence claims against Stephens' employer and his on-site supervisor (collectively "Defendants"). Defendants moved to dismiss the claims under North Carolina Rules

of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief can be granted, arguing that the North Carolina Industrial Commission has exclusive jurisdiction over workplace injuries and Plaintiff failed to allege facts sufficient to establish an exception to the Commission's exclusive jurisdiction. The trial court denied Defendants' motions and Defendants appealed. Because Plaintiff alleged facts sufficient to establish exceptions to the Commission's exclusive jurisdiction, we affirm.

## I.    Factual Background

The facts of this case, as Plaintiff alleged, are as follows: King Machine operates a facility in Casswell County "where it manufactures tire molds and repurposes tire molds for tire manufacturers[,]" which weigh "approximately two thousand (2,000) pounds and [are] used in the tire manufacturing process to give tires their final shape, taking on tread pattern and sidewall engraving." Defendant Kory J. Kachur "was the on-site Vice President of King Machine and was responsible and familiar with the work that was being performed by the employees of Defendant King Machine who were present at the facility . . . ." "At the time of the incident, [Stephens] was employed by King Machine as a general laborer and had been an employee for approximately three (3) weeks[,]" prior to which Stephens had "never worked in a factory or manufacturing facility and never repaired and/or repurposed tire molds," nor had he "receive[d] training as to the proper method of repairing and repurposing tire molds."

On 30 April 2019, although "Defendants knew [Stephens] was not trained, qualified or experienced" to work with tire molds, Defendants "pulled [Stephens] from another part of the Plant" and "instructed [Stephens] to detach bolts from below a two-piece tire mold weighing approximately two thousand (2,000) pounds elevated by a forklift." Stephens was "not supervised" or "provided with adequate personal protective/supportive equipment while undertaking the tasks assigned to him." "Shortly after [Stephens] was instructed to perform work under the tire mold a bolt snapped causing one part of the two piece mold to collapse from the elevated position" onto Stephens' chest, killing him.

After Stephens' death, the North Carolina Occupational Safety and Health Division of the North Carolina Department of Labor ("NCOSH") investigated the Caswell County Plant and concluded that King Machine had violated several sections of the Occupational Safety and Health Act ("OSHA"). Specifically, NCOSH concluded that King Machine "committed a 'Willful Serious' violation of 29 CFR 1910.178(m)(2), whereby employees stood under or passed under the elevated portion of a [forklift][,] . . . while unbolting metal plates weight approximately 1,705 pounds." NCOSH also concluded that King Machine "committed a violation of 29 CFR 1910.178(a)(4) and 29 CFR 1910.178(a)(5), whereby Defendant King Machine modified their [forklifts] without manufacturer approval with a single hook beam front-end forklift attachment to transport and lift approximately 1,705 pound metal plates."

## II.    Procedural History

Plaintiff filed its initial complaint in superior court in October 2020, alleging willful negligence against King Machine and Kachur and seeking compensatory and punitive damages.  Defendants answered in January 2021, denying Plaintiff's allegations, and asserting that the court lacked subject matter jurisdiction because Plaintiff had failed to allege conduct that warranted an exception to the Industrial Commission's exclusive jurisdiction over workplace injuries.  In July 2021, Plaintiff filed a motion for leave to amend its complaint to add allegations clarifying its claims, which was granted.  Plaintiff filed its amended complaint in September 2021, which included a negligence claim against King Machine in addition to the previous allegations of willful negligence against each defendant.  Defendants answered in October 2021, denying Plaintiff's allegations and reasserting that the court lacked subject matter jurisdiction to hear the case.  Defendants filed motions to dismiss Plaintiff's complaint under North Carolina Rules of Civil Procedure 12(b)(1) and 12(b)(6) in December 2021.  After hearing the parties' arguments, the trial court denied Defendants' motions.  Defendants appealed.

The record on appeal was settled on 22 April 2022.  Defendants filed their principal brief on 8 July 2022.  Plaintiff filed a supplement to the record on appeal on 4 August 2022 pursuant to North Carolina Rules of Appellate Procedure 9(b)(5), asserting that the settled record on appeal was insufficient to respond to the issues presented in Defendants' brief.  On 8 August 2022, Plaintiff filed its brief.  Defendants

subsequently moved to strike Plaintiff's 9(b)(5) supplement, arguing that the documents in the supplement were not appropriate additions to the record on appeal because they "were neither filed with the trial court, submitted to the trial court for consideration at the hearing, admitted by the trial court, or made the subject of an offer of proof[.]" Plaintiff also moved on 11 October 2022, pursuant to North Carolina Rules of Appellate Procedure 9(b)(5)(b) and 37, to add the transcript from the December 2021 hearing on Defendants' motions to dismiss to the record on appeal; Defendants opposed the motion.

### III. Discussion

#### A. Motions on Appeal

##### 1. *Defendants' Motion to Strike Plaintiff's Rule 9(b)(5) Supplement to the Record on Appeal*

Plaintiff's brief, filed four days after it filed the 9(b)(5) supplement, extensively referenced documents in the supplement. Defendants moved to strike the supplement, arguing that its contents were not appropriate additions to the record on appeal. Defendants further requested that this Court strike all references to the supplement in Plaintiff's brief.

Rule 9(b)(5)(a) of the North Carolina Rules of Appellate Procedure states, "If the record on appeal as settled is insufficient to respond to the issues presented in an appellant's brief . . . , the responding party may supplement the record on appeal with any items that could otherwise have been included pursuant to this Rule 9." N.C. R.

App. P. 9(b)(5)(a). Rule 9(d) states, "Exhibits and other items that have been filed, served, submitted for consideration, admitted, or made the subject of an offer of proof may be included in the record on appeal . . . ." N.C. R. App. P. 9(d).

It is well-settled that this Court may "only consider the pleadings and filings before the trial court . . . ." *Twaddell v. Anderson*, 136 N.C. App. 56, 68, 523 S.E.2d 710, 719 (1999). As Defendants argue, Plaintiff has failed to demonstrate that the documents in the 9(b)(5) supplement had been filed, served, submitted for consideration, admitted, or made the subject of an offer of proof. Accordingly, Defendants' motion to strike the 9(b)(5) supplement and all references to its contents is allowed.

### 2. *Plaintiff's Motion to Add the Hearing Transcript*

After all briefs in this matter had been filed, Plaintiff moved pursuant to Rule 9(b)(5)(b) to add the transcript of the hearing on Defendants' motions to dismiss to the record on appeal. Rule 9(b)(5)(b) states, "On motion of any party or on its own initiative, the appellate court may order additional portions of a trial court record or transcript sent up and added to the record on appeal." N.C. R. App. P. 9(b)(5)(b).

In support of its motion, Plaintiff argues that inclusion of the transcript will assist this Court's understanding of the issues and that no prejudice would result from the addition as both parties reference the hearing in their briefs. Defendants oppose the motion, arguing that, because all briefs had already been filed, Defendants would have no opportunity to respond to any issue raised by the introduction of the

transcript.  Defendants also argue that their proposed issues on appeal are the same issues presented in their brief, and thus good cause does not exist to add the transcript to the record after the record on appeal was settled.

After considering the parties' arguments, in our discretion, we deny Plaintiff's motion to add the hearing transcript to the record on appeal.

## B. Appellate Jurisdiction

The trial court's order denying Defendants' motions to dismiss is not a final order and is therefore interlocutory. *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.")  A party generally has "no right of immediate appeal from interlocutory orders and judgments." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). However, an interlocutory order may be immediately appealable if the judgment affects a substantial right.  N.C. Gen. Stat. § 7A-27(b)(3)(a) (2021).  Our Supreme Court has determined that the denial of a motion to dismiss under Rule 12(b)(1) and the exclusivity provision of the North Carolina Workers' Compensation Act ("the Act") affects a substantial right and is immediately appealable.  *See Burton v. Phoenix Fabricators & Erectors, Inc.*, 362 N.C. 352, 661 S.E.2d 242 (2008).  Similarly, this Court has recognized that denial of a motion to dismiss under Rule 12(b)(6) is immediately appealable as affecting a substantial right to the extent that the motion

relates to the exclusivity provision of the Act. *Est. of Vaughn v. Pike Elec., LLC*, 230 N.C. App. 485, 491-92, 751 S.E.2d 227, 231-32 (2013).

Defendants' motions to dismiss under Rules 12(b)(1) and 12(b)(6) are based on the exclusivity provision of the Act and its effect on the trial court's jurisdiction over the matter. Thus, the trial court's order denying Defendants' motions affects a substantial right and is immediately appealable. *See* N.C. Gen. Stat. § 7A-27(b)(3)(a). Accordingly, this Court has jurisdiction to review the trial court's order.

## C. Standard of Review

Defendants make interrelated arguments that the trial court erred by failing to dismiss Plaintiff's claims under North Carolina Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief can be granted.

We review an order denying a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure de novo. *Hatcher v. Harrah's N.C. Casino Co.*, 169 N.C. App. 151, 155, 610 S.E.2d 210, 212 (2005) (citation omitted). Under de novo review, "the court considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) (citation omitted).

We likewise review a trial court's order denying a Rule 12(b)(6) motion to dismiss de novo. *Est. of Long v. Fowler*, 378 N.C. 138, 148, 861 S.E.2d 686, 694 (2021).

In ruling on a Rule 12(b)(6) motion to dismiss, "the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted." *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citation omitted). "[T]he well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970) (quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is proper only in the following circumstances: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted).

Because a trial court's jurisdiction over workers' compensation matters depends on whether an exception to the Act's exclusivity provision applies, the threshold question is whether Plaintiff has stated a claim which fits within those exceptions. *See Blow v. DSM Pharm., Inc.*, 197 N.C. App. 586, 589, 678 S.E.2d 245, 249 (2009). Thus, we review whether Plaintiff's complaint stated a claim for which relief can be granted under Rule 12(b)(6).

**D. Analysis**

Defendants argue that the North Carolina Industrial Commission has

exclusive jurisdiction over Plaintiff's claims under the Act because Plaintiff failed to state a claim that falls within exceptions to the Act's exclusivity provision.

The Act states:

> Every employer subject to the compensation provisions of this Article shall secure the payment of compensation to his employees in the manner hereinafter provided; and while such security remains in force, he or those conducting his business shall only be liable to any employee for personal injury or death by accident to the extent and in the manner herein specified.

N.C. Gen. Stat. § 97-9 (2021). The Act also provides:

> If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.

*Id.* § 97-10.1 (2021).

In effect, the Act provides an avenue for injured employees to receive "sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence." *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003). "In return, the Act limits the amount of recovery available for work-related injuries and removes the employee's right to pursue potentially larger damages awards in civil actions." *Woodson v. Rowland*, 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991)

(citation omitted).

The exclusivity provision generally precludes common law negligence actions against employers and co-employees whose negligence caused the injury. *Pleasant v. Johnson*, 312 N.C. 710, 713, 325 S.E.2d 244, 247 (1985). However, our Supreme Court recognizes two exceptions to the exclusivity provision. First, an employee may pursue a civil action against an employer when the employer "intentionally engages in misconduct knowing it is substantially certain to cause injury or death to employees and an employee is injured or killed by that conduct[.]" *Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228. Second, an employee may pursue a civil action against a co-employee for their willful, wanton, and reckless negligence. *Pleasant*, 312 N.C. at 717, 325 S.E.2d at 250.

### 1. *Willful Negligence of King Machine (Woodson Claim)*

Defendants argue that Plaintiff failed to allege facts sufficient to establish an exception to the Commission's exclusive jurisdiction under *Woodson*. To state a *Woodson* claim, a plaintiff "must allege that the employer intentionally engaged in misconduct knowing that such conduct was substantially certain to cause injury or death . . . ." *Vaughn*, 230 N.C. App. at 494, 751 S.E.2d at 233-34 (citing *Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228). "'Substantial certainty' under *Woodson* is more than the 'mere possibility' or 'substantial probability' of a serious injury or death. No one factor is determinative in evaluating whether a plaintiff has stated a valid *Woodson* claim; rather, all of the facts taken together must be considered." *Arroyo v.*

*Scottie's Prof. Window Cleaning, Inc.*, 120 N.C. App. 154, 159, 461 S.E.2d 13, 16 (1995) (citations omitted).

In *Woodson*, decedent worked for defendant-employer, a subcontractor who was hired to help dig two trenches to lay sewer lines. *Woodson*, 329 N.C. at 334-35, 407 S.E.2d at 225. In the interest of time, the general contractor provided a second crew to dig the second trench. *Id.* at 335, 407 S.E.2d at 225. The foreman for the second crew refused to work on the second trench without a trench box, as safety regulations required. *Id.* Defendant-employer procured a trench box for the second crew but did not do so for his own crew. *Id.* While decedent was working in the first trench without the protection of a trench box, the trench collapsed, and decedent was killed. *Id.* at 336, 407 S.E.2d at 225-26.

The administrator of decedent's estate filed a wrongful death action in superior court against defendant-employer and forecast evidence that the soil conditions were such that the trench was substantially certain to fail, that defendant-employer knew of the dangers associated with trenching and had disregarded safety regulations, and that defendant-employer had been at the site and had observed the trench firsthand. *Id.* at 345-46, 407 S.E.2d at 231-32. The trial court granted summary judgment in favor of defendant-employer. *Id.* at 333, 407 S.E.2d at 224. Our Supreme Court reversed, stating that plaintiff's forecast of evidence was sufficient to show that there was a genuine issue of material fact as to whether defendant-employer's conduct satisfied the substantial certainty standard. *Id.* at 345, 407 S.E.2d at 231.

Our Supreme Court revisited the *Woodson* exception, again in a summary judgment posture, in *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 597 S.E.2d 665 (2003). There, decedent worked for the town of Scotland Neck as a general maintenance worker who assisted in the operation of a garbage truck. *Id.* at 553, 597 S.E.2d at 666. Part of decedent's job involved attaching a dumpster to a latching mechanism on the garbage truck, which allowed the truck to lift the dumpster and empty the dumpster's contents into the truck. *Id.* One day, while the dumpster was being lifted, the latching mechanism failed, causing the dumpster to swing towards decedent and pin him against the truck. *Id.* at 553-54, 597 S.E.2d at 666. Although decedent's co-workers freed him, he later died from his injuries. *Id.* at 554, 597 S.E.2d at 666.

An investigation revealed that the truck's latching mechanism was broken and the dumpster was bent, and that these defects were the direct cause of the accident. *Id.* Although several of decedent's co-workers indicated that the latching mechanism had been broken for at least two months prior to the accident, decedent's supervisor denied any knowledge of such defects. *Id.* Additionally, an NCOSH investigation found five state labor law violations, including "failure to train employees in the safe operation of garbage truck equipment, failure to properly supervise employees in the operation of garbage truck equipment, failure to implement a program for inspection of garbage truck equipment, operation of defective garbage truck equipment, and unsafe operation of garbage truck equipment." *Id.*

Plaintiffs, the co-administrators of decedent's estate, filed a complaint in superior court against the town and its officials alleging "willful, wanton, reckless, careless and gross negligence." *Id.* at 554, 597 S.E.2d at 666-67. Defendants moved to dismiss plaintiffs' claim under Rule 12(b)(6) and were denied. *Whitaker v. Town of Scotland Neck*, 154 N.C. App. 660, 662, 572 S.E.2d 812, 813 (2002). However, the trial court later granted defendants summary judgment. *Id.* This Court reversed, relying on a six-factor test established in *Wiggins v. Pelikan, Inc.*, 132 N.C. App. 752, 513 S.E.2d 829 (1999). *Id.* at 663-65, 572 S.E.2d at 814-15. Our Supreme Court reversed this Court and reinstated the trial court's order granting summary judgment. *Whitaker*, 357 N.C. at 558, 597 S.E.2d at 669. In doing so, the Supreme Court "explicitly reject[ed] the *Wiggins* test and rel[ied] solely on the standard originally set out . . . in *Woodson v. Rowland*." *Id.* at 556, 597 S.E.2d at 667. The Supreme Court emphasized that "[t]he *Woodson* exception represents a narrow holding in a fact-specific case, and its guidelines stand by themselves." *Id* at 557, 597 S.E.2d at 668.

The Supreme Court distinguished the facts before it from those in *Woodson*, specifically noting that:

> On the day of the accident, none of the Town's supervisors were on-site to monitor or oversee the workers' activities. Decedent was not expressly instructed to proceed into an obviously hazardous situation as in *Woodson*. There is no evidence that defendants knew that the latching mechanism on the truck was substantially certain to fail or that if such failure did occur, serious injury or death would

be substantially certain to follow.

*Id.* at 558, 597 S.E.2d at 668.  The Supreme Court pointed out that "in *Woodson*, the employee worked in a deep, narrow trench in which it was impossible for him to escape . . . [,]" and that "decedent was not so helpless." *Id.* at 558, 597 S.E.2d at 669. The Supreme Court concluded that "[t]he facts of this case involve defective equipment and human error that amount to an accident rather than intentional misconduct." *Id.*

This Court examined the *Woodson* exception in the context of a motion to dismiss under Rule 12(b)(6) in *Arroyo* and *Vaughn*.  In *Arroyo*, plaintiff had been working as a window washer for less than a year when he was instructed to wash windows on a tall building by climbing down a ladder from the roof without safety equipment.  120 N.C. App. at 157, 461 S.E.2d at 15.  To reach some of the windows, plaintiff was required to stand on a narrow ledge and lean outward.  *Id.*  Plaintiff and a coworker attempted to balance each other by locking arms, but plaintiff's supervisor instructed them to stop because they were working too slowly.  *Id.*  Shortly after plaintiff ceased locking arms with his coworker for balance, he fell and suffered permanent injury.  *Id.* at 158, 461 S.E.2d at 15-16.

Plaintiff filed a complaint in superior court alleging that he had never been given any safety training in the cleaning of high-rise exterior windows; that his employer did not publish safety rules or enforce State and Federal safety measures; that his employer was aware that permitting or requiring him to work from a great

height without safety equipment was dangerous and substantially certain to cause serious injury or death; and that his employer intentionally forewent safety precautions because they were considered too cumbersome. *Id.* at 155-157, 461 S.E.2d at 14-15. The trial court dismissed plaintiff's complaint for failure to state a claim. *Id.* at 155, 461 S.E.2d at 14. This Court reversed, holding that plaintiff's allegations were "sufficient to state a legally cognizable claim under *Woodson* that defendant intentionally engaged in conduct that it knew was substantially certain to cause serious injury or death." *Id.* at 159-60, 461 S.E.2d at 17.

In *Vaughn*, decedent worked as a groundman who assisted other employees working on overhead power distribution lines. 230 N.C. App. at 486, 751 S.E.2d at 229. Decedent's supervisor directed decedent to climb a utility pole and retrofit a live transformer, in part by "removing the hotline clamp from the primary line which [left] the primary line exposed." *Id.* at 487-88, 751 S.E.2d at 230. This task was ordinarily "reserved for [a] trained and experienced lineman[,]" as opposed to decedent, who was a groundman. *Id.* at 488, 751 S.E.2d at 230. While decedent was attempting this procedure, he was electrocuted. *Id.*

Plaintiff filed a complaint in superior court alleging that decedent had not received any training to perform the work required of a lineman, that decedent had not been provided with proper safety equipment, that decedent's employer was aware that requiring an untrained groundman to perform the work of a trained lineman was certain to result in death or serious injury, and that decedent's employer knew

that groundmen were instructed to perform the inherently dangerous activities reserved for trained linemen. *Id.* at 487-89, 751 S.E.2d at 229-30. The trial court denied the employer's motion to dismiss. *Id.* at 490, 751 S.E.2d at 231. This Court reversed, noting that plaintiff made no factual allegations to support his contention that the employer knew groundmen were instructed to perform the inherently dangerous activities reserved for trained linemen. *Id.* at 498-99, 751 S.E.2d at 236. Furthermore, plaintiff's allegations established that the practice was in clear violation of the employer's published work methods and safety manuals, suggesting that the employer "did not intend for any of its groundmen, including [d]ecedent, to climb utility poles and de-energize transformers." *Id.* at 499, 751 S.E.2d at 236.

In *Arroyo*, plaintiff alleged facts that, taken as true, were sufficient to establish that the employer intentionally placed plaintiff in the dangerous situation knowing the danger involved. *See Arroyo*, 120 N.C. App. at 159-60, 461 S.E.2d at 16-17. On the other hand, in *Vaughn*, plaintiff was unable to articulate specific facts indicating that the employer knew of and disregarded safety procedures, and his conclusory allegations were discordant with the employer's published safety policies. *See Vaughn*, 230 N.C. App. at 498-99, 751 S.E.2d at 236-37.

Here Plaintiff alleged the following:

> 17. Upon information and belief, [Stephens] had no experience and received no training in the repair and/or replacement of tire molds and the proper method of disconnecting the two-piece tire molds in use at Defendant King Machine.

18. At the time of the incident, Defendants knew working under heavy loads without proper support or using proper equipment was certain to result in death or serious injury.

. . . .

20. Upon information and belief, Defendant King Machine . . . instructed [Stephens] to detach bolts from below a two-piece tire mold weighing approximately two thousand (2,000) pounds elevated by a forklift.

21. Defendants knew [Stephens] was not trained, qualified or experienced to undertake such a dangerous activity.

. . . .

25. Upon information and belief, [Stephens] was not provided with adequate personal protective/supportive equipment while undertaking the tasks assigned to him.

. . . .

35. Following [Stephens'] death, an investigation was performed by [NCOSH].

36. [NCOSH] reached the following conclusions as a result of their investigation:

    a. Defendant King Machine committed a "Willful Serious" violation of 29 CFR 1910.178(m)(2), whereby employees stood under or passed under the elevated portion of a [forklift] . . . while unbolting metal plates weight approximately 1,705 pounds.

        . . . .

    c. Defendant King Machine committed a violation of 29 CFR 1910.178(a)(4) and 29 CFR 1910.178(a)(5), whereby Defendant King Machine modified their [forklifts] without manufacturer approval with a single hook beam front-end forklift attachment to transport and lift approximately 1,705 pound metal plates.

37. Under information and belief, Defendants knew or should have known the proper safety measures in the industry and Defendant knew or should have known of the proper method of elevating heavy equipment, like tire

molds, so that the two piece molds can be disassembled.

. . . .

52. As alleged herein, Defendant King Machine . . . intentionally engaged in conduct knowing it was substantially certain to cause serious injury or death to [Stephens]. Among other things, this conduct included the following:

a. Instructing [Stephens], a new general laborer, to perform work below an approximately 2,000 pound tire mold, work that he had not been trained to perform and was inherently dangerous to perform;

b. Instructing [Stephens] to work below the tire mold without proper experience, training, or safety equipment;

c. Fostering a work environment in which speed is prioritized such as [Stephens] was forced to perform dangerous and deadly work for which he had not been trained and for which he was unqualified to perform.

d. Instructing [Stephens] to perform work from below a forklift without the proper supports necessary to prevent a crushing type incident;

e. The violation of applicable statutes, rules and regulations, including with limitation 29 CFR 1910.178(a)(4), 29 CFR 1910.178(a)(5), 29 CFR 1910.178(l)(3)(i)(M), and 29 CFR 1910.178(m)(2); and

f. Such other intentional and/or aggravated conduct as may be revealed during discovery.

Plaintiff's allegations are more like those in *Arroyo* than those in *Vaughn*. Specifically, Plaintiff alleged that King Machine "knew working under heavy loads without proper support or using proper equipment was certain to result in death or serious injury[,]" that NCOSH concluded King Machine had committed a "'Willful

Serious' violation of [OSHA], whereby employees stood under or passed under the elevated portion of a [forklift] . . . while unbolting metal plates weight approximately 1,705 pounds[,]" and that NCOSH concluded King Machine had "modified their [forklifts] without manufacturer approval" to facilitate this process. As in *Arroyo*, Plaintiff alleged facts that, taken as true, establish that King Machine was both aware of and encouraged the misconduct that resulted in Stephens' death.

Additionally, Plaintiff alleged facts that, taken as true, establish that King Machine's conduct "was substantially certain to cause injury or death . . . ." *Vaughn*, 230 N.C. App. at 494, 751 S.E.2d at 233-34 (citing *Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228). In *Woodson*, our Supreme Court held that directing employees to dig a trench without a trench box was substantially certain to result in the trench caving in. In *Arroyo*, this Court held that directing employees to clean high-rise windows with no fall protection was substantially certain to result in an employee falling from the building. Here, directing employees to stand beneath and disassemble 2,000-pound metal tire molds—suspended by forklifts that had been modified without manufacturer approval—without the proper supports necessary to prevent a crushing-type incident is substantially certain to result in the tire mold falling on and crushing the employee.

Defendants argue that Plaintiff's allegations are insufficient to state a *Woodson* claim because "Plaintiff does not allege a history of safety violations or the removal of safety equipment[,]" and because "Plaintiff does not allege [King Machine]

knew the bolt would snap." (Capitalization altered).[1] Although the *Woodson* exception is narrow and fact-bound, these exact allegations are not required to state a *Woodson* claim. *Woodson* itself did not state the cause of the trench cave-in, only that the cave-in was substantially certain. Nor did *Arroyo* state how plaintiff fell, only that a fall was substantially certain. Here, Plaintiff made no argument that the mold was secure but for a bolt that snapped. Instead, Plaintiff explicitly alleged that the mold was improperly suspended, and that if a safe method for working beneath the mold exists, Stephens was not so informed.

The dissent asserts that *Whitaker* is a more appropriate case by which to measure the present facts. The dissent's reliance on *Whitaker* is misplaced as *Whitaker* is procedurally and factually distinguishable. Unlike the present case, *Whitaker* and *Woodson* were decided on motions for summary judgment rather than on motions to dismiss like *Arroyo* and *Vaughn*. In fact, in *Whitaker*, as here, the trial court denied defendant's motion to dismiss plaintiffs' claim under Rule 12(b)(6). *Whitaker*, 154 N.C. App. at 662, 572 S.E.2d at 813.

"The distinction between a Rule 12(b)(6) motion to dismiss and a motion for summary judgment is more than a mere technicality." *Locus v. Fayetteville St. Univ.*, 102 N.C. App. 522, 527, 402 S.E.2d 862, 866 (1991). At summary judgment, the

---

[1] The dissent, too, improperly focuses on the precipitating event. Plaintiff's allegation, and our decision, is that requiring employees to work beneath 2,000-pound metal plates without proper supports is substantially certain to result in serious injury or death to anyone standing below, no matter what they are doing.

parties, and the court, have the benefit of discovery. *See* N.C. Gen. Stat. §1A-1, Rule 56 ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ."). On a motion to dismiss, the question is solely whether the allegations are legally sufficient. *Wood v. Guilford Cnty.*, 355 N.C. at 166, 558 S.E.2d at 494 (citation omitted).

In *Woodson*, our Supreme Court had the benefit of expert testimony indicating that the soil conditions were ripe for a cave-in. In *Whitaker*, the trial court denied defendant's motion to dismiss but granted summary judgment after plaintiff had the opportunity to present evidence that the town knew its garbage truck was defective and failed to do so. Here, Plaintiff has had no such opportunity, and it would be inappropriate to compare his allegations to a case that emerged from a significantly more developed evidentiary record.[2] Accordingly, this case is more appropriately compared to *Arroyo* and *Vaughn*, which arose from the same procedural posture.

In addition to the distinct procedural posture, the facts alleged in Plaintiff's amended complaint are not, as the dissent asserts, "much closer to those in *Whitaker* than those in *Woodson*." In *Whitaker*, the Court emphasized that "[o]n the day of the accident, none of the Town's supervisors were on-site to monitor or oversee the workers activities[,]" and that "[d]ecedent was not expressly instructed to proceed

---

[2] Plaintiff acknowledged this limitation in both his complaint and his brief.

into an obviously hazardous situation . . . ." *Whitaker*, 357 N.C. at 558, 597 S.E.2d at 668. Here, Plaintiff alleged that Kachur "was the on-site Vice President of King Machine and was responsible and familiar with the work that was being performed[,]" and that Kachur "did, in fact, instruct [Stephens] to work below the approximately 2,000 pound tire mold . . . ." Furthermore, in *Whitaker*, the Court could not conclude that the town engaged in intentional misconduct because plaintiff failed to present evidence that the town knew its garbage truck was faulty. *Id.* Here, Plaintiff alleged that King Machine "modified their [forklifts] without manufacturer approval . . . to transport and lift approximately 1,705 pound metal plates" and "actively create[ed], through its use of [a forklift] vs crane, a dangerous condition such that workers, like [Stephens], were unable to perform their duties safely and subject themselves to bodily harm and death[.]"

The dissent further mischaracterizes our decision by invoking an explicitly-rejected six-factor test and using it as a lens through which to view our analysis. As our Supreme Court stated when it disavowed that test, "[*Woodson*'s] guidelines stand by themselves." *Id.* at 557, 597 S.E.2d at 668. Our decision was reached, as *Whitaker* instructs, by applying the substantial certainty standard as it existed in *Woodson* and without reference to the *Wiggins* factors.

Because Plaintiff alleged facts that, taken as true, establish that King Machine intentionally engaged in misconduct knowing that such conduct was substantially certain to, and in fact did, cause Stephens' death, Plaintiff's allegations are sufficient

to state a legally cognizable claim under *Woodson*. *See Arroyo*, 120 N.C. App. at 159-60, 461 S.E.2d at 17.

### 2. *Willful Negligence of Kory J. Kachur (Pleasant Claim)*

Defendants argue that Plaintiff failed to allege facts sufficient to establish an exception to the Commission's exclusive jurisdiction under *Pleasant*. To state a *Pleasant* claim, a plaintiff must allege that a co-employee acted with willful, wanton, and reckless negligence; and that the co-employee's negligence resulted in plaintiff's injury. *Pleasant*, 312 N.C. at 717-18, 325 S.E.2d at 250. Willful negligence is "the intentional failure to carry out some duty imposed by law or contract which is necessary to the safety of the person or property to which it is owed." *Id.* at 714, 325 S.E.2d at 248 (citations omitted). Wanton conduct is "an act manifesting a reckless disregard for the rights and safety of others." *Id.* (citations omitted). "This does not require an actual intent to injure, but can be shown constructively when the co-employee's conduct threatens the safety of others and is so reckless or manifestly indifferent to the consequences that a finding of willfulness and wantonness equivalent in spirit to actual intent is justified." *Vaughn*, 230 N.C. App. at 500, 751 S.E.2d at 237 (quotation marks and citation omitted).

In *Pleasant*, plaintiff's co-employee on a construction site attempted to drive a truck as close to plaintiff as possible without striking him, but miscalculated and struck plaintiff, seriously injuring him. *Pleasant*, 312 N.C. at 711, 325 S.E.2d at 246. Our Supreme Court held that this behavior constituted willful, wanton, and reckless

negligence and allowed the case to proceed in superior court. *Id.* at 718, 325 S.E.2d at 250.

Our Supreme Court revisited the *Pleasant* exception in *Pendergrass v. Card Care Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993), where it held that two co-employees' alleged negligence did not rise to the level of the negligence in *Pleasant*. There, plaintiff was seriously injured when his arm was caught in a final inspection machine that he was operating. *Id.* at 236, 424 S.E.2d at 393. Plaintiff filed a complaint in superior court alleging that two co-employees were grossly and wantonly negligent "in directing [plaintiff] to work at the final inspection machine when they knew that certain dangerous parts of the machine were unguarded, in violation of OSHA regulations and industry standards." *Id.* at 238, 424 S.E.2d at 394. Our Supreme Court held that the co-employees' conduct, as plaintiff alleged, did not fall within the *Pleasant* exception, reasoning that:

> Although they may have known certain dangerous parts of the machine were unguarded when they instructed [plaintiff] to work at the machine, we do not believe this supports an inference that they intended that [plaintiff] be injured or that they were manifestly indifferent to the consequences of his doing so.

*Id.*

More recently, in *Vaughn*, this Court held that plaintiff had alleged facts

sufficient to state a *Pleasant* claim against his supervisor.[3]  In *Vaughn*, decedent worked as a groundman who assisted other employees working on overhead power distribution lines.  230 N.C. App. at 486, 751 S.E.2d at 229.  Decedent's supervisor directed decedent to climb a utility pole and retrofit a live transformer, in part by "removing the hotline clamp from the primary line which [left] the primary line exposed."  *Id.* at 487-88, 751 S.E.2d at 230.  This task was ordinarily "reserved for [a] trained and experienced lineman[,]" as opposed to decedent, who was a groundman. *Id.* at 488, 751 S.E.2d at 230.  While decedent was attempting this procedure, he was electrocuted.  *Id.*

This Court held the supervisor's behavior was "not less egregious than that of the co-employee in *Pleasant . . . .*" *Id.* at 502, 751 S.E.2d at 238.  Noting that decedent was "an untrained groundman who had previously worked as a truck driver," this Court held that the supervisor's alleged direction to decedent to climb the power pole and work on live power lines without the necessary training, equipment, or experience was "sufficient to create an inference that [the supervisor] was manifestly indifferent to the consequences of his actions . . . ."  *Id.* at 503, 751 S.E.2d at 239.

Here, Plaintiff alleged the following:

> 17.  Upon information and belief, [Stephens] had no experience and received no training in the repair and/or replacement of tire molds and the proper method of

---

[3] Although this Court held that plaintiff's allegations were insufficient to state a claim against the employer under *Woodson*, this Court held that plaintiff had alleged facts sufficient to state a claim against the supervisor under *Pleasant*.  *Vaughn*, 230 N.C. App. at 503, 751 S.E.2d at 239.

disconnecting the two-piece tire molds in use at Defendant King Machine.

18. At the time of the incident, Defendants knew working under heavy loads without proper support or using proper equipment was certain to result in death or serious injury.

. . . .

20. Upon information and belief, Defendant King Machine, under guidance or lack thereof from Defendant Kachur, instructed [Stephens] to detach bolts from below a two-piece tire mold weighing approximately two thousand (2,000) pounds elevated by a forklift.

21. Defendants knew [Stephens] was not trained, qualified or experienced to undertake such a dangerous activity.

22. Despite [Stephens'] training or lack thereof, the task that [Stephens] was instructed to perform was inherently dangerous for a skilled laborer, let alone a newly hired employee with no training.

23. Upon information and belief, [Stephens] was not supervised while undertaking the dangerous activity of disassembling tire molds.

24. Upon information and belief, [Stephens] was pulled from another part of the Plant in the moments leading up to the incident described herein due to staffing shortages.

25. Upon information and belief, [Stephens] was not provided with adequate personal protective/supportive equipment while undertaking the tasks assigned to him.

. . . .

45. At the time of the incident alleged in this Complaint, Defendant Kachur knew, or was substantially certain, that instructing [Stephens], who had no training or experience to work under an approximately 2,000 pound tire mold without any supports or safety measures posed a serious risk of injury or death.

46. Despite knowledge that instructing [Stephens] to perform this work posed a serious risk of injury or death to [Stephens], Defendant Kachur did, in fact, instruct

> [Stephens] to work below the approximately 2,000 pound tire mold by failing to provide the appropriate equipment that is standard in the industry.
>
> 47. In directing, instructing and requiring that [Stephens] work below heavy tire molds, a task that Defendant Kachur knew [Stephens] was not trained for or experienced in, the conduct of Defendant Kachur demonstrated willful negligence, wanton negligence, reckless negligence, a reckless disregard for the rights and safety of others, and a manifest indifference to others, including [Stephens].

Plaintiff's allegations are similar to the allegations in *Vaughn*. Here, like in *Vaughn*, Plaintiff alleged that Kachur knowingly directed Stephens—an untrained employee who had been working elsewhere in the plant—to detach bolts from beneath a 2,000-pound metal tire mold—which was suspended by a forklift that had been modified without manufacturer approval—without any training, supervision, or safety equipment. Like in *Vaughn*, this conduct is sufficient to create an inference that Kachur was manifestly indifferent to the consequences of his actions. *See Vaughn*, 230 N.C. App. at 503, 751 S.E.2d at 239. Thus, like the supervisor's conduct alleged in *Vaughn*, Kachur's conduct as Plaintiff alleged is sufficient to state a legally cognizable claim under *Pleasant*.

The dissent asserts without further support, "I do not believe that the factual allegations in the complaint are sufficient to establish a *Pleasant* claim against Mr. Stephens' supervisor." Again, focusing on a contrived theory that a bolt on the tire

mold was defective,[4] the dissent claims Kachur's actions "fall short to show that he had actual or constructive intent to injure Mr. Stephens . . . ." However, Plaintiff expressly alleged that Kachur knew the danger of working beneath a 2,000-pound metal tire mold, knew that Stephens had no training or experience in working beneath a 2,000-pound metal tire mold, and directed Stephens to perform the work anyway, without protective equipment, instruction, or supervision. Such an action cannot be characterized as anything less than a manifest indifference to the consequences of his actions.

### 3. *Ordinary Negligence of King Machine (Stranger to Employment Claim)*

Plaintiff argues, in the alternative, that King Machine was not Stephens' employer when the incident occurred, and therefore Plaintiff's negligence action against King Machine does not fall within the Commission's jurisdiction. Specifically, Plaintiff argues that "[Stephens] was an employee of TotalSource at all times and never an employee of [King Machine]."

Our Supreme Court has interpreted the Act's exclusivity provision as "allowing an injured worker to bring a common law negligence action against a third party . . . when the third party is a 'stranger to the employment.'" *Wood v. Guilford Cnty.*, 355 N.C. 161, 164, 558 S.E.2d 490, 493-94 (2002) (citations omitted). However, Plaintiff's argument depends entirely on an alleged employment agreement that is not in the

---

[4] Plaintiff made no allegation that any part of the mold was defective.

record on appeal. Furthermore, the record on appeal shows that Plaintiff alleged,[5] and Defendants admitted,[6] that King Machine was Stephens' employer at the time of the incident. Accordingly, we decline to address Plaintiff's argument that the Act does not apply.

## IV. Conclusion

Because Plaintiff alleged facts sufficient to establish exceptions to the Commission's exclusive jurisdiction over this case under *Woodson* and *Pleasant*, the trial court did not err by denying Defendants' motions to dismiss pursuant to Rule 12(b)(6). Because Plaintiff sufficiently pled *Woodson* and *Pleasant* claims, the trial court did not err by denying Defendants' motions to dismiss pursuant to Rule 12(b)(1). The trial court's order denying Defendants' motions to dismiss is affirmed.

AFFIRMED.

Judge WOOD concurs.

Judge DILLON concurs in part and dissents in part by separate opinion.

---

[5] Paragraph 13 of Plaintiff's complaint states, "At the time of the incident, [Stephens] was employed by King Machine as a general laborer and had been an employee for approximately three (3) weeks."

[6] Paragraph 13 of Defendants' answer states, "The allegations of Paragraph 13 are admitted, upon information and belief."

No. COA22-372 – *Stephens v. ADP Totalsource*

DILLON, Judge, concurring in part and dissenting in part.

Desmond Stephens was tragically crushed to death in a workplace accident by half of a heavy two-piece tire mold which fell on him when a bolt providing support for the mold failed. His estate filed this action against his employers and supervisor for his death. Because I conclude the complaint fails to allege a claim establishing any exception to the Industrial Commission's exclusive jurisdiction, my vote is to reverse the trial court's order denying Defendants' motion to dismiss. Therefore, I respectfully dissent.[7]

### *Woodson* Claim Against Employers

Generally, our Workers' Compensation Act provides the sole remedies against an employer for a workplace accident. However, in its 1991 landmark *Woodson* decision, our Supreme Court carved out a narrow exception to the Act's exclusivity, that a tort action apart from the Act may be maintained where an employee's injury or death is caused by intentional conduct of the employer and the employer knew it was substantially certain that such conduct would cause the injury or death:

> We hold that when an employer *intentionally* engages in misconduct *knowing* it is *substantially certain* to cause serious injury or death to employees and an employee is injured or killed by the misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct

---

[7] I concur in Section III.A. of the majority opinion disposing of the parties' motions on appeal.

> is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

*Woodson v. Rowland*, 329 N.C. 330, 341-42, 407 S.E.2d 222, 228 (1991).

The majority relies primarily on our Court's 1995 *Arroyo* opinion handed down four years after *Woodson*, to conclude that Mr. Stephens' estate has properly alleged a *Woodson* claim. *Arroyo v. Scottie's*, 120 N.C. App. 154, 461 S.E.2d 13 (1995). I conclude that this reliance on *Arroyo* is misplaced and that our Supreme Court's more recent guidance in *Whitaker v. Scotland Neck*, 357 N.C. 552, 597 S.E.2d 665 (2003) compels reversal of the trial court's order, as explained below.

In *Arroyo*, our Court relied on several factors to conclude that an employee had proved a *Woodson* claim. In 1999, four years after *Arroyo*, our Court identified and weighed six factors to conclude that an employee had proved a *Woodson* claim. *Wiggins v. Pelikan*, 132 N.C. App. 752, 513 S.E.2d 829 (1999). In *Wiggins*, we expressly relied on *Arroyo* for two of the factors; namely, whether the employer knew of, but failed to take, additional safety precautions which would have reduced the risk *and* whether the employer's conduct which created the risk violated state or federal work safety regulations. *Id.* at 757, 513 S.E.2d at 833.

The majority in the present case relies, in part, on allegations supporting the existence of the two "*Arroyo*" factors restated in *Wiggins*: Mr. Stephens' employers failed to take additional safety precautions by failing to provide Mr. Stephens "adequate personal protective/supportive equipment," and Mr. Stephens' employers

2

willfully violated government safety regulations. The majority also cites allegations in the complaint supporting the existence of another *Wiggins* factor, namely that Mr. Stephens "was not trained, qualified or experienced" to perform the task assigned to him by his employers. *Id.* at 758, 513 S.E.2d at 833 (factor which considers "[w]hether the defendant-employer offered training").

However, in 2003, four years after *Wiggins* and eight years after *Arroyo*, our Supreme Court reversed a decision of our Court in which we allowed a plaintiff's *Woodson* claim to proceed, holding that "the six-factor test created by the Court of Appeals in *Wiggins* misapprehends the narrowness of the substantial certainty standard set forth in *Woodard*." *Whitaker*, 357 N.C. at 555-56, 597 S.E.2d at 667.

Our Supreme Court reiterated that *Woodson* provided a "*narrow* exception to the general exclusivity of the [Act]" by allowing an employee or his estate to sue the employer in tort "*only in the most egregious cases* of employer misconduct" where said conduct is intentional and "where such misconduct is *substantially certain* to lead to the employee's serious injury or death." *Id.* at 557, 597 S.E.2d at 668 (emphasis added). The Court reminded that a *Woodson* claim is not stated where the evidence shows a "mere possibility" or even a "substantial probability" that the employer's intentional misconduct would result in injury or death. *Id.*

In *Whitaker*, the evidence showed that a sanitation worker was crushed to death by a dumpster as the dumpster was suspended as its contents were being emptied into a garbage truck and the mechanism which latched the dumpster to the

3

truck during the process failed, causing the dumpster to swing around and strike the employee. *Id.* at 558, 597 S.E.2d at 669. The Court in *Whitaker* distinguished these facts with those shown in *Woodson*. Specifically, the Court noted that a valid tort claim existed in *Woodson* because the evidence there showed the employer "disregarded all safety measures and intentionally placed his employee into a hazardous situation in which experts concluded *that only one outcome was substantially certain to follow*: an injurious, if not fatal, cave-in of the trench." *Id.* at 557-58, 597 S.E.2d at 668.

The evidence in *Whitaker* showed the latching mechanism holding the suspended dumpster in place was defective and the employer had committed five "serious" violations of state labor law, including among others a "failure to train employees" and a "failure to properly supervise employees[.]" *Id.* at 554, 597 S.E.2d at 666. The Court, though, no *Woodson* claim existed, in part, because "[t]here was no evidence that [the employer] knew that the latching mechanism on the truck was substantially certain to fail[.]" *Id.* at 668, 597 S.E.2d at 668.

The facts as alleged in the complaint in the case before us is much closer to those in *Whitaker* than those in *Woodson*. It is true that it was substantially certain Mr. Stephens would be seriously injured or die *if* a bolt keeping the tire mold suspended failed. But there is no allegation that it was substantially certain that the bolt would fail as Mr. Stephens was working under the mold, much less that Mr. Stephens' employers knew that the bolt was going to fail. There is no allegation that

Mr. Stephens' inexperience contributed to the bolt failing. This is not to say that there was not a strong possibility or probability that the bolt would fail; however, there is no allegations to suggest that it was *substantially certain* that the bolt would fail. The allegations only show willful negligence by the employers and a tragic accident.

## *Pleasant* Claim Against Supervisor

I do not believe that the factual allegations in the complaint are sufficient to establish a *Pleasant* claim against Mr. Stephens' supervisor. While the factual allegations show that Mr. Stephens' supervisor willfully breached duties he may have owed to Mr. Stephens, they fall short to show that he had actual or constructive intent to injure Mr. Stephens much less that he knew or had reason to know that the bolt which failed causing Mr. Stephens' death was defective. *See Pleasant v. Johnson*, 312 N.C. 710, 714-15, 325 S.E.2d 244, 248 (1985) (noting the "distinction between the willfulness which refers to the breach of duty and the willfulness which refers to the injury" stating that "[i]n the former only the negligence is willful, while in the latter the injury is intentional").